The STATE of Ohio, Appellant,

v.

PERKINS, Appellee.█

[Cite as *State v. Perkins* (2001), 145 Ohio App.3d 583.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 18627.

Decided Aug. 31, 2001.

*Carley J. Ingram,* Montgomery County Assistant Prosecuting Attorney, for appellant.

*Arvin S. Miller,* Montgomery County Assistant Public Defender, for appellee.

FRDERICK N. YOUNG, Judge.

The state of Ohio is appealing from a decision by the Montgomery County Court of Common Pleas sustaining David Perkins, Jr.'s motion to suppress.

The undisputed and pertinent facts of the case are fully set forth in the trial court's decision as follows:

"On September 2, 2000, Dayton Police Officer Stephen Bergman and his partner Officer Gavin Larremore were in uniform and in a marked cruiser driving eastbound on McCall Street, a high drug area, at 1:50 a.m. Through his rearview mirror, Bergman observed a car being driven by the Defendant Perkin [*sic*] come within two feet, then within one foot, of the rear of the police cruiser. Perkins' car came so close to the rear of the cruiser that Bergman was unable to see headlights of Perkins' car in the cruiser's rearview mirror. Both vehicles were traveling approximately 35 miles per hour. This 'tailgating' continued for approximately one city block. The condition of the street described by Bergman was 'wet and rainy.'

"Bergman had two concerns: First if the cruiser had to suddenly stop, Perkins' car would collide with his cruiser due to the lack of an assured clear distance. Second, since it is very unusual to 'tailgate' a police cruiser, Bergman was worried about what the driver's motivation might be.

"Bergman pulled his cruiser to the right and Perkins' car drove past the cruiser. Bergman decided to stop Perkins' car to issue a citation for the traffic violation of following the cruiser too closely, and to investigate the motivation of the driver in driving so closely to a police cruiser.

"Bergman activated his overhead lights to stop the car. As Perkins' car was being stopped, the driver—Perkins—dipped his body straight down towards the driver floorboard. This furtive movement concerned Bergman, because in his experience such movement often involves the concealing of a weapon.

"With caution Bergman approached the driver side of Perkins' car, and Larremore the passenger side. Bergman told Perkins why he had been stopped, and asked for his drivers license, registration, and proof of insurance. As Perkins opened the glove box to retrieve those items, Officer Larremore said, 'Hold on, he's got marijuana in the glove box.'

"In order to get Perkins away from the marijuana, and concerned that there might be a weapon in the car, Bergman ordered Perkins to exit his car. Bergman took Perkins to the cruiser. Larremore recovered the marijuana from the glove box. At this point the officers' intention was to issue to Perkins two citations for driving too closely to the cruiser in violation of a Dayton Ordinance, and for possession of marijuana.

"Bergman returned to Perkins' car. He removed an open bottle of beer from the pocket of the driver door and emptied it. Bergman suspected that there might be a weapon under the driver's seat for two reasons: First, marijuana had been discovered in the car in a high drug area. In Bergman's experience, guns are often associated with illegal drug activity. Second, Perkins had engaged in the furtive movement of dipping his body straight down to the driver floorboard upon being stopped by the police. Bergman looked under the driver's seat and discovered a .38 caliber revolver which he seized.

"Bergman returned to the cruiser and advised Perkins that he was under arrest for carrying a concealed weapon. After advising Perkins of the Miranda Rights, Bergman questioned him regarding the weapon. In addition to being arrested for CCW, Perkins also was cited for the traffic violation and possession of marijuana."

Perkins was indicted by the Montgomery County Grand Jury on September 26, 2000 on one count of carrying a concealed weapon and one count of having a weapon while under a disability. Perkins filed a motion to suppress and a hearing was held on November 9, 2000. The trial court overruled Perkins's motion in a decision filed on November 14, 2000, finding that the stop had been reasonable because it had been based upon probable cause that Perkins had committed a traffic violation. The trial court further found that the warrantless search of the vehicle had been reasonable despite Perkins's being locked in the cruiser, based upon *State v. Carpenter* (June 14, 1995), Montgomery App. No. 14893, unreported, 1995 WL 396513. In *Carpenter,* we held that as long as there is a possibility that a detainee *"might* be allowed to return to the vehicle," police officers are permitted to search the interior of the vehicle for suspected concealed weapons. (Emphasis added.)

Thereafter, Perkins filed a motion for reconsideration based upon this court's decision in *State v. Henderson* (Nov. 7, 1997), Montgomery App. No. 16016, unreported, 1997 WL 691459, in which we held that where no danger exists that a

suspect would "gain immediate control over a weapon," there is no exception to the warrant requirement. Based upon *Henderson,* the trial court reconsidered its decision and found that the exception to the warrant requirement did not apply because at the time of the search Bergman had not determined that Perkins was to return to his vehicle; thus, there was no reason to suspect that Perkins would retrieve a weapon from his vehicle.

The state of Ohio now appeals that ruling and presents us with one assignment of error:

"The trial court erred when it found that the limited search for weapons of Perkins' vehicle was not justified."

The state of Ohio requests that this court overrule our holding in *State v. Henderson* (Nov. 7, 1997), Montgomery App. No. 16016, unreported, 1997 WL 691459, and hold that a weapon secreted in a vehicle by a detainee poses "danger to others," and therefore an officer who has not decided whether to return a detainee to the car may still conduct a protective frisk for weapons to the interior portion of the vehicle.

It is a general rule of appellate review that a party cannot assert new legal theories for the first time on appeal. *Stores Realty Co. v. Cleveland* (1975), 41 Ohio St.2d 41, 43, 70 O.O.2d 123, 322 N.E.2d 629. Therefore, we will not consider issues that an appellant failed to raise initially in the trial court. *Lippy v. Society Natl. Bank* (1993), 88 Ohio App.3d 33, 623 N.E.2d 108. Because the state failed to raise this argument in the trial court, we find that the state has waived it on appeal. In any event, we would not be inclined to extend *Henderson* as the state suggests.

An officer may order the driver of a lawfully stopped car to exit the vehicle based on consideration of the officer's safety. *Pennsylvania v. Mimms* (1977), 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331. An order to step out of the car does not need to be justified by any constitutional quantum of suspicion. *State v. Evans* (1993), 67 Ohio St.3d 405, 408, 618 N.E.2d 162.

Officers may be authorized to search the passenger compartment of a vehicle for weapons if they possess a reasonable and articulable suspicion that a suspect is dangerous and might gain immediate control of weapons located there when he returned to the car. *Michigan v. Long* (1983), 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201. The totality of the circumstances must be examined to determine whether officers possessed such suspicion at the time of the encounter. *State v. Freeman* (1980), 64 Ohio St.2d 291, 18 O.O.3d 472, 414 N.E.2d 1044.

Furthermore, in *Henderson, supra,* we clarified the following:

"[W]e do find that a police officer may search the interior of an automobile when the officer reasonably suspects that the individual has a weapon secreted in the automobile (as in the case of a furtive gesture) and the officer has made the determination that he or she is going to allow the individual to return to the vehicle. In that case, a search for the officer's safety is justified because the officer has confirmed that he or she is going to allow the individual to re-enter the vehicle wherein the individual could gain immediate control over a weapon. Until a police officer has finally decided to return the individual to the car, however, safety reasons cannot be used to justify the search."

At this time, we stand by our decision in *Henderson* and find that there is no justification in permitting warrantless searches where it has not been determined that a detainee may return to a vehicle. We do not agree with the state's suggestion that an exception should be carved out based upon the possibility that a suspected weapon in that detainee's vehicle poses a "danger to others." Furthermore, in light of our holding above, we decline to follow our decision in *State v. Carpenter* (June 14, 1995), Montgomery App. No. 14893, unreported, 1995 WL 396513, and overrule it to the extent that it is in conflict with *State v. Henderson, supra,* and our decision herein.

Accordingly, we overrule the state's sole assignment of error.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

FAIN and GRADY, JJ., concur.

FAIN, Judge, concurring in the opinion and judgment.

I concur in the opinion and judgment of this court.

The state has not attempted to justify the search of the car in this case upon the grounds that the police officers had probable cause to believe further evidence could be found in the car concerning Perkins's possession of, or other criminal involvement with, illegal drugs, and that exigent circumstances—the fact that the car was mobile, and owned by someone else who might come and move it or remove incriminating evidence from it—justified a warrantless search. To the contrary, at all times, both in the trial court and in this court, the state has sought to justify the search solely as a protective search for weapons.

I write separately merely to clarify that the result in this case might have been different if the state had sought to justify the search that led to the discovery of the firearm as a search for evidence of illegal drug activities, based upon probable cause, with sufficient exigency to justify dispensing with the warrant require-

ment.   In this case, unlike in *State v. Henderson* (Nov. 7, 1997), Montgomery App. No. 16016, unreported, 1997 WL 691459, the police officers had noticed incriminating evidence, in plain view and without conducting a search, before conducting a warrantless search of the car.