OPINION
 I {¶ 1} Defendant-appellant Darrell K. Russell appeals from his conviction and sentence for Carrying a Concealed Weapon, following a no-contest plea. Russell contends that the trial court erred in denying his motion to suppress. Russell contends that the trial court erred in finding certain facts in support of its decision to overrule Russell's motion to suppress, because these factual findings are contradicted by the record. After reviewing the transcript of the suppression hearing, we conclude that the trial court's factual findings are supported by competent and credible evidence.
 {¶ 2} Russell also contends that the search of the van in this case was unlawful. We initially conclude that Russell was lawfully stopped by the police, because the police had reasonable suspicion to make an investigative stop based on an anonymous tip that was sufficiently corroborated when they arrived at the scene. Based on the totality of the circumstances including the tip, the police officer's observations, and furtive movements of the front-seat passenger after a police order to show his hands, reasonable suspicion existed for the police officer to remove Russell from the van, conduct a pat-down for weapons, and place him in a cruiser.
 {¶ 3} Russell relies on State v. Henderson, Montgomery App. No. 16016, 1997 WL 691459, and State v. Perkins,145 Ohio App.3d 583, 2001-Ohio-1463, 763 N.E.2d 715, to support his position that the police were not allowed to search the van, because the police had not made a determination as to whether any of the occupants were going to be able to re-enter the van. The State concedes that the van search cannot be justified as a protective search. However, the State contends that probable cause existed for the police to search the van under the automobile exception to the Fourth Amendment warrant requirement. We agree.
 {¶ 4} We conclude that exigent circumstances existed, because the van was readily mobile at the time of the stop by the police. In light of other factors that existed in addition to the furtive movement by the front-seat passenger, after Officer Bullens had ordered the passengers to show their hands, we conclude that probable cause existed for the police to search the van in the area in which the front-seat passenger was reaching. Once a loaded hand gun was found by the police in that area, probable cause existed to search the entire van. We conclude that the trial court did not err in concluding that the search of the van was lawful.
 {¶ 5} Therefore, we conclude that the trial court did not err in overruling Russell's motion to suppress. Accordingly, the judgment of the trial court is affirmed.
 II {¶ 6} One morning in August, 2002, Officer Jamie Bullens of the Dayton Police Department was dispatched to 811 McCleary Street in Dayton as a result of an anonymous phone call indicating that two Black males were selling drugs out of a maroon van at that address. When Officer Bullens arrived at the scene, Officer Shelton was already there, having arrived minutes earlier. Upon arrival, Officer Bullens first observed a Black male and a Black female standing near a maroon van that was parked in front of 815 McCleary Street. The male and female began walking away from the maroon van when Officer Bullens pulled up. Officer Bullens verbally stopped them in order to determine their identity.
 {¶ 7} Officer Bullens then approached the van and ordered the occupants to show their hands. All of the occupants complied with the request except the front-seat passenger, who made an overt motion to his left and low, reaching behind the driver's seat. Officer Bullens drew his weapon and again ordered the occupants to show their hands. The front-seat passenger then complied. Officer Bullens maintained his position and called for additional assistance. Officer Brian Dedrick arrived on the scene and assisted in removing the occupants from the van. Four people occupied the van, and Darrell Russell was in the driver's seat. Officer Bullens removed Russell from the van, patted him down for weapons, and placed him in the back seat of his cruiser. The other occupants were also removed and placed in cruisers.
 {¶ 8} Russell did not have a driver's license on him, and it was determined that he was not the registered owner of the van. Officer Bullens determined that the van was registered to a female who was not at the scene. Officer Bullens was unsuccessful in trying to contact her. As a result, Officer Bullens was going to tow the van in accordance with Dayton Police Department Tow Policy. Prior to the tow, the police conducted a search of the van. Officer Bullens looked in the area in which the front-seat passenger had reached when asked to show his hands. Officer Bullens found a loaded hand gun in that area. Officer Bullens then found marijuana and a loaded hand gun underneath the driver's seat, where Russell had been seated. Officer Bullens went back to his cruiser and read Russell his Miranda rights. Russell then admitted that the loaded hand gun under the driver's seat was his, and that he had it for protection.
 {¶ 9} Russell was subsequently arrested and was indicted for Carrying a Concealed Weapon, in violation of R.C. 2923.12(A). Thereafter, Russell filed a motion to suppress. After a hearing, the trial court overruled Russell's motion to suppress, in part, finding that "[t]he stop and initial contact with the occupants of the van was appropriate, based on the information from the caller and what the officer observed at the scene." The trial court then requested counsel to submit a memorandum regarding the issue of the van search. Counsel submitted memoranda on the search issue. The trial court subsequently overruled the motion to suppress, concluding that the police had probable cause to search the van. Russell then entered a plea of no contest and was found guilty and sentenced accordingly.
 {¶ 10} From his conviction and sentence, Russell appeals.
 III {¶ 11} Russell's first and second assignments of error are as follows:
 {¶ 12} "The trial court erred to appellant's prejudice in making its factual basis to support its ruling that appellant's motion to suppress should be overruled.
 {¶ 13} "The trial court erred to appellant's prejudice in determining that the search of the motor vehicle was lawful."
 {¶ 14} Russell first contends that the trial court erred in finding certain facts in support of its decision overruling Russell's motion to suppress. Russell contends that the trial court's factual findings are contradicted by the record.
 {¶ 15} A trial court undertakes the position of the trier of fact in a motion to suppress evidence. State v. Retherford
(1994), 93 Ohio App.3d 586, 592, 639 N.E.2d 498. Therefore, the trial court is in the best standpoint to decide questions of fact and assess witness credibility. Id., citing State v. Clay
(1972), 34 Ohio St.2d 250, 63 O.O.2d 391, 298 N.E.2d 137. In reviewing a motion to suppress, this court will accept the factual findings of a trial court if the findings are supported by competent and credible evidence. Id.
 {¶ 16} Russell contends that the trial court erred in finding that "because police obtained information that none of the passengers owned the vehicle, the van could easily have been driven away." However, the record does not reflect this finding. The trial court listed several factors that supported its finding of probable cause to search the van. One factor considered by the trial court was "[t]he information that none of the van passengers was its owner." Another separately listed factor the trial court considered was that "[t]he van was parked on a public street, and could easily have been driven away."
 {¶ 17} These factual findings are not contradicted by the record. Officer Bullens testified that he determined that the van was registered to a female who was not at the scene. Therefore, there was competent and credible evidence that "none of the van passengers was its owner." Officer Bullens also testified that the van was legally parked on the side of a public street. Officer Bullens testified that he parked in front of the van at an angle, and that Officer Shelton had parked to the left rear back of the van. Officer Bullens testified that the van was not sandwiched between the two cruisers. Officer Bullens testified that there were vehicles parked behind the van, and Officer Shelton was on the street in the lane of travel. Officer Bullens testified that he would normally not park in front of a suspect vehicle, but he pulled up in front of the van because the two pedestrians started to walk away from the van. Based on this testimony, we conclude that the trial court's finding that "[t]he van was parked on a public street, and could easily have been driven away," is supported by competent and credible evidence.
 {¶ 18} Russell also contends that the trial court erred in finding that Russell was not under arrest when Officer Bullens conducted a pat-down search of Russell and then placed him in his cruiser to obtain Russell's identification.
 {¶ 19} An arrest is effectuated where the following four requisite elements are met: "(1) an intent to arrest; (2) under real or assumed authority; (3) accompanied by an actual or constructive seizure of the person; and, (4) which is so understood by the person arrested." State v. Hatch, Montgomery App. No. 18986, 2002-Ohio-55, 2002 WL 10449, at * 3, citingState v. Barker (1978), 53 Ohio St.2d 135, 7 O.O.3d 213,372 N.E.2d 1324. "A seizure is an arrest rather that a Terry
detention if a `reasonable person' in the suspect's position would have understood the situation to constitute a restraint on his freedom of movement of the degree the law associated with formal arrest." Id. at *4, citation omitted.
 {¶ 20} The record does not demonstrate that all four requisite elements for an arrest were met. After conducting a pat-down of Russell to check for weapons, Officer Bullens testified that he was then planning on placing Russell in the back seat of his cruiser in order to identify him. Officer Bullens testified that Russell did not have a driver's license with him. Officer Bullens testified that when Russell was placed in his cruiser, he was not under arrest, but was being briefly detained in order to determine his identity. Officer Bullens also testified that at the time the weapons were found in the van, Russell was not yet under arrest. We conclude that there is nothing in the record to demonstrate that Officer Bullens manifested an intent to arrest Russell when he conducted a pat-down search of Russell and then placed Russell in his cruiser to obtain Russell's identification. Therefore, there is competent and credible evidence that Russell was not under arrest when he was subjected to a pat-down search for weapons by Officer Bullens and then placed in Officer Bullens's cruiser to be identified. Russell contends that the trial court erred in finding that Officer Bullens conducted an inventory search of the van only after he determined that none of the occupants would be permitted to drive the van. The trial court's finding of fact was as follows:
 {¶ 21} "The van was registered to a woman not at the scene, and Bullens tried, but could not get in contact with her. He determined that none of the occupants would be permitted to drive the van, so he planned to have the van towed to a city garage area, after doing an inventory search in accordance with the Dayton Police Department Towing Policy."
 {¶ 22} Officer Bullens testified that he determined that the van was registered to a female who was not at the scene, and that he was unsuccessful in trying to contact her. As a result, Officer Bullens testified that he was going to tow the van in accordance with Dayton Police Department Tow Policy. Officer Bullens testified that the van would be towed after conducting an inventory of the van. Officer Bullens also testified that Russell did not have a driver's license on him, and that he was not the registered owner of the van. Based on this testimony, we conclude that the trial court's finding is supported by competent and credible evidence.
 {¶ 23} Russell contends that the trial court erred in finding that the police had not yet determined whether to allow Russell to return to the van at the time he was placed in Officer Bullens's cruiser. Officer Bullens testified that he placed Russell in the back seat of his cruiser in order to determine his identity. The record shows that Officer Bullens did not determine who Russell was and who the registered owner of the van was until after Russell was placed in the cruiser. Therefore, the trial court's finding that the police had not determined whether to allow Russell to return to the van at the time he was placed in the cruiser is supported by competent and credible evidence.
 {¶ 24} After reading the transcript of the suppression hearing, we conclude that the trial court's factual findings are supported by competent and credible evidence.
 {¶ 25} In Russell's second assignment of error, he contends that the trial court erred to his prejudice in concluding that the search of the van was lawful.
 {¶ 26} Upon accepting the trial court's factual findings as true, we must independently ascertain, as a matter of law, whether the facts meet the pertinent legal standard, without deference to the trial court's conclusion. Retherford,93 Ohio App.3d at 592.
 {¶ 27} The first issue is whether Russell was lawfully stopped and detained by the police. In order to conduct an investigative stop, the police officer must "be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." Terry v. Ohio (1968), 392 U.S. 1, 21. The police officer may conduct a protective search for safety purposes during an investigative stop if the police officer has "reasonable suspicion that an individual is armed based on the totality of the circumstances." State v. Bobo (1988),37 Ohio St.3d 177, 181, 524 N.E.2d 489. Reasonable and articulable suspicion to make an investigative stop entails something less than probable cause. State v. White, Montgomery App. No. 18731, 2002-Ohio-262, 2002 WL 63294, at * 2, citing Terry,392 U.S. at 22. An anonymous tip that is corroborated demonstrates "sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop." Florida v. J.L.
(2000), 529 U.S. 266, 270, citing Alabama v. White (1990),496 U.S. 325, 327. Reasonable suspicion requires that the anonymous "tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." Id. at 272.
 {¶ 28} The anonymous tip in this case indicated that two Black males were selling drugs out of a maroon van at 811 McCleary Street in Dayton. Officer Bullens testified that he went to 811 McCleary Street, and when he arrived, he observed a maroon van parked at 815 McCleary Street. Officer Bullens testified that upon arrival, he observed two pedestrians standing near the maroon van, and that they began walking away from the maroon van when Officer Bullens pulled up. Officer Bullens also testified that he observed four Black males in the maroon van. Officer Bullens testified that he had been an officer for thirteen years and had made arrests in the area before for drug offenses. In light of the anonymous tip and the observations of Officer Bullens, Officer Bullens could reasonably infer that a transaction had occurred between the two pedestrians and the occupants of the maroon van. We conclude that the anonymous tip was sufficiently corroborated to demonstrate a sufficient indicia of reliability, providing reasonable suspicion to make an investigative stop. Although the maroon van was located at 815 McCleary Street, rather than 811 McCleary Street, and there were four Black males, rather than two Black males, we find that this does not significantly detract from the reliability of the anonymous tip. Therefore, the initial stop of Russell by the police was lawful.
 {¶ 29} We also conclude that the Officer Bullens's detention of Russell was lawful. Officer Bullens testified that when he approached the van, he ordered the occupants to show their hands for safety purposes. Officer Bullens testified that all of the occupants complied with the request except the front-seat passenger, who made an overt motion to his left and low, reaching behind the driver's seat. Officer Bullens testified that he drew his weapon and again gave an order that the occupants show their hands, to which the front seat passenger then complied. Officer Bullens testified that he maintained his position and called for additional assistance. After additional assistance arrived, Officer Bullens testified that he removed Russell from the van, patted him down for weapons, and placed him in the back seat of Bullens's cruiser. Officer Bullens testified that Russell was not under arrest at that time, but was being briefly detained in order to determine his identity. Based on the totality of the circumstances, including the tip, Officer Bullens's observations, and the furtive movements of the front seat passenger, reasonable suspicion existed for Officer Bullens to remove Russell from the van, conduct a pat-down search for weapons, and place him in the cruiser.
 {¶ 30} Russell contends that the search of the van was unlawful. Russell relies on State v. Henderson, supra, andState v. Perkins, supra, to support his argument that the police were not allowed to search the van, because the police had not made a determination whether any of the occupants were going to be able to re-enter the automobile.
 {¶ 31} In Henderson, we held that "a police officer may search the interior of an automobile when the officer reasonably suspects that the individual has a weapon secreted in the automobile (as in the case of a furtive gesture) and the officer has made the determination that he or she is going to allow the individual to return to the vehicle. In that case, a search for the officer's safety is justified because the officer has confirmed that he or she is going to allow the individual to re-enter the vehicle wherein the individual could gain immediate control over a weapon. Until a police officer has finally decided to return the individual to the car, however, safety reasons cannot be used to justify the search." Henderson, at *4.
 {¶ 32} We stood by this decision in Perkins and also declined to extend Henderson to hold "that a weapon secreted in a vehicle by a detainee poses `danger to others,' and therefore an officer who has not decided whether to return a detainee to the car may still conduct a protective frisk for weapons to the interior portion of the vehicle." Perkins, at 586. We concluded that "there is no justification in permitting warrantless searches where it has not been determined that a detainee may return to a vehicle." Id. at 587. It was noted that the result inPerkins "might have been different if the state had sought to justify the search that led to the discovery of the firearm as a search for evidence of illegal drug activities, based upon probable cause, with sufficient exigency to justify dispensing with the warrant requirement." Id. (Fain, J., concurring).
 {¶ 33} In this case, the State concedes that the search of the van cannot be justified as a Terry protective search. The State contends that probable cause existed for the police to search the van under the automobile exception to theFourth Amendment warrant requirement. We agree.
 {¶ 34} The Fourth Amendment to the United States Constitution and the Ohio Constitution, Section 14, Article I, prohibit a search without a warrant unless there is an exception that applies. Henderson, at *3, citing Katz v. United States
(1967), 389 U.S. 347, 357; State v. Hines (1993),92 Ohio App.3d 163, 166, 634 N.E.2d 654. "Under the `automobile exception' to the Fourth Amendment's warrant requirement, the police may search an automobile if they have probable cause to believe it contains evidence and there are exigent circumstances justifying a warrantless search. See State v. Mills (1992),62 Ohio St.3d 357, 367; Carroll v. United States (1925),267 U.S. 132, 45 S.Ct. 280. This court has repeatedly recognized the `inherent mobility' of automobiles, such that exigent circumstances typically exist if the vehicle was readily mobile at the time of the stop. See Mills, supra, at 367; State v.Cracraft (Dec. 29, 1995), Montgomery App. No. 14809, unreported, at * 4; State v. Snyder (Aug. 10, 1994), Montgomery App. No. 14089, unreported, at *7; see, also, California v. Carney
(1985), 471 U.S. 386, 392-93, 105 S.Ct. 2066, 2069-70. The immobilization of the vehicle or low probability of its being moved or evidence being destroyed does not remove the officers' justification to conduct a search pursuant to the automobile exception. See United States v. Chadwick (1977), 433 U.S. 1,12, 97 S.Ct. 2476, 2484; Michigan v. Thomas (1982),458 U.S. 259, 261, 102 S.Ct. 3079, 3080-81." State v. Jordan, Montgomery App. No. 18600, 2001-Ohio-1630, 2001 WL 1245083, at *5.
 {¶ 35} In this case, the maroon van was parked on a public street and was readily mobile at the time of the stop by the police. Officer Shelton was the first to arrive and Officer Bullens testified that Officer Shelton had parked to the left rear back of the van on the street in the lane of travel. Officer Bullens testified that he parked in front of the van at an angle when he pulled up a few minutes after Officer Shelton. Officer Bullens testified that there were vehicles parked behind the van, and that the van was not sandwiched between the two cruisers. We conclude that exigent circumstances existed here, because the van was readily mobile at the time of the stop by the police. Therefore, whether the search of van was valid turns on the issue of whether probable cause existed.
 {¶ 36} Probable cause is "a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction." State v. Kessler (1978), 53 Ohio St.2d 204,208, 7 O.O.3d 375, 373 N.E.2d 1252, citing Carroll, supra at 149. "The police must have `probable cause' to believe that they will find the instrumentality of a crime or evidence pertaining to a crime before they begin their warrantless search." Id., citing Dyke v. Taylor Implement Mfg. Co. (1968), 391 U.S. 216,221. "Furtive movements alone are not sufficient to justify the search of an automobile without a warrant. However, where a furtive movement has been made by occupants of a vehicle in response to the approach of police officers, the addition of other factors may give rise to a finding of probable cause to search the vehicle." Id. at 208-209, citation omitted.
 {¶ 37} In this case, there was a furtive movement made by the front-seat passenger, after Officer Bullens ordered the passengers to show their hands, and other factors existed. Other factors present in addition to the furtive movement include the anonymous tip, which was sufficiently corroborated, and Officer Bullens's observations and experience. There was an anonymous tip in this case indicating that two Black males were selling drugs out of a maroon van at 811 McCleary Street in Dayton. As discussed above, the anonymous tip was sufficiently corroborated to have significant indicia of reliability. Officer Bullens testified that upon arrival, he observed two pedestrians standing near the maroon van, and that they began walking away from the van when Officer Bullens pulled up. Officer Bullens also testified that he had been an officer for thirteen years and had made arrests in that area before, within the last six months to a year, for drug offenses. Officer Bullens testified that "quite a bit goes on there." In light of the other factors that existed, in addition to the furtive movement by the front-seat passenger, after Officer Bullens ordered the passengers to show their hands, we conclude that probable cause existed for the police to search the van in the area to which the front-seat passenger was reaching. It was reasonable for Bullens to believe, based upon the totality of the circumstances, that the front-seat passenger was ignoring his order to show hands, in order to place illegal contraband or a weapon on the floor of the car behind the front seat. Once a loaded hand gun was found by the police in that area, probable cause existed to search the entire van.
 {¶ 38} We conclude that the trial court did not err in holding that the search of the van was lawful.
 {¶ 39} Russell's first and second assignments of error are overruled.
 III {¶ 40} Both of Russell's assignments of error having been overruled, the judgment of the trial court is affirmed.
Judgment affirmed.
Brogan and Wolff, JJ., concur.