OPINION
{¶ 1} Steven Smith was found guilty of possession of heroin and possession of cocaine after pleading no contest to two counts of an indictment charging these offenses. He was sentenced to concurrent sentences of two years (mandatory) and six months. Smith has appealed, advancing two assignments of error arising out of his unsuccessful motion to suppress *Page 2 
evidence. Although not completely clear from his appellate brief, Smith appears to contend that (1) the police did not have a reasonable, articulable suspicion to make a protective search of the lunge area of his car and (2) the police were not justified in making a protective search of the lunge area without first determining that he would be allowed to regain possession of his car, citing State v. Perkins (2001),145 Ohio App.3d 583.
 I {¶ 2} The protective search of the lunge area revealed an open liquor bottle in the rear pocket of the driver's seat. This constituted a first degree misdemeanor under the city ordinance for which Smith was arrested. A subsequent search incident to that arrest produced the drugs which were the subject of the indictment.
 {¶ 3} The trial court rendered a comprehensive decision containing findings of fact which find ample support in the hearing transcript on Smith's suppression motion. We will reproduce those findings and supplement those findings with testimony from the record as appropriate to Smith's assignments. It is clear that the trial court credited the State's evidence where it conflicted with that of Smith's witness, Jules Boggs.
 {¶ 4} "On January 12, 2007, at approximately 6:00 p.m., Dayton Officer Paul Saunders was in uniform and in a marked cruiser with his partner, Officer Patricia Ponichtera. They conducted a traffic stop of a vehicle observed being operated with no white light illuminating the license plate and with excessive window tint; additionally, the passenger was not wearing a seatbelt.
 {¶ 5} "Officer Saunders approached the driver, later identified as the Defendant Steven A. Smith, and Officer Ponichtera approached the passenger, later identified as Jules Boggs. Mr. *Page 3 
Boggs could not produce identification, but did give his name and Social Security number. A computer check indicated that he was supposed to be in prison. Mr. Boggs was taken, unhandcuffed, to the rear of the cruiser while the information could be verified.
 {¶ 6} "When the officers were in their cruiser with Mr. Boggs and Mr. Smith remained in his vehicle, they observed the car slightly rocking from left to the right. They could not see what was going on in the vehicle because of the dark tint of the windows.
 {¶ 7} "Officer Saunders asked Mr. Smith to exit the car because of the movements; Mr. Smith was directed to put his hands on his head for a brief pat-down, but continued to drop his hands. Mr. Smith was then handcuffed and moved between the cruiser and his vehicle where Officer Ponichtera held onto him.
 {¶ 8} "Officer Saunders returned to the Defendant's vehicle to check the `lunge area. `During this process, the officer found an open bottle of liquor in the pocket behind the driver's seat. Saunders told Ponichtera of the item which they both believed to be a violation of R.C.G.O. 90.16, Transportation of Intoxicating Liquor in Vehicles, a misdemeanor of the first degree. The officers then conducted a more thorough search of the Defendant, but found nothing illegal.
 {¶ 9} "While they were waiting for another cruiser (since Mr. Boggs was still in the rear of their cruiser), a plain-clothes detective arrived. He apparently knew one or both of the individuals and, upon conducting a more thorough search of Mr. Smith, allegedly found the drugs that are the subject of this motion."
 {¶ 10} In addition to the trial court's recitation of the facts, we believe the following testimony is worthy of mention. Officer Saunders expressly stated that the rocking of the car *Page 4 
caused him concern about whether Smith was obtaining a weapon and it was then that he called for backup. He also testified that he obtained the liquor bottle by reaching behind the driver's seat from the front of the driver's seat although he was not sitting in the driver's seat when he did so. Officer Saunders testified that Smith was initially handcuffed for security reasons-although he was not then under arrest — and Officer Ponichtera testified that Smith was handcuffed because he wouldn't keep his hands off of his pockets. After finding the open liquor bottle, Saunders and Ponichtera formally arrested Smith on the ordinance violation. Officer Saunders testified that Detective House, the plain-clothes detective who searched Smith, found the drugs between the cheeks of Smith's buttocks.
 II {¶ 11} The trial court concluded that the computer information about Smith's passenger, the rocking of the car after the passenger was removed and Smith was alone in the car, and Smith's actions during the effort to conduct a patdown were sufficient to support a reasonable, articulable suspicion that a weapon might be present in the car where Smith might reach it were he to return to the car.
 {¶ 12} We agree. Indeed, Saunders testified that the rocking of the car — caused by Smith's movement inside the car — prompted his concern that Smith might be obtaining a weapon and prompted his then calling for backup assistance. As it turns out, Smith's movements may have been attributable to his concealing the drugs on his person but Saunders could not have known this because the window tint prevented Saunders and Ponichtera from seeing what Smith was doing. When the initial patdown disclosed no weapons, Saunders could well have had a reasonable, articulable suspicion that Smith had secreted a weapon within the *Page 5 
lunge area of the car.
 {¶ 13} The thornier issue in this case is whether Saunders was entitled to search the lunge area of Smith's car when he did. InState v. Henderson (Nov. 7, 1997), Montgomery App. No. 16016,1997 WL 691459, we stated:
 {¶ 14} "[W]e do find that a police officer may search the interior of an automobile when the officer reasonably suspects that the individual has a weapon secreted in the automobile (as in the case of a furtive gesture) and the officer has made the determination that he or she is going to allow the individual to return to the vehicle. In that case, a search for the officer's safety is justified because the officer has confirmed that he or she is going to allow the individual to re-enter the vehicle wherein the individual could gain immediate control over a weapon. Until a police officer has finally decided to return the individual to the car, however, safety reasons cannot be used to justify the search."
 {¶ 15} In State v. Perkins (2001), 145 Ohio App.3d 583, 587, we reaffirmed what we said in Henderson.
 {¶ 16} "At this time, we stand by our decision in Henderson and find that there is no justification in permitting warrantless searches where it has not been determined that a detainee may return to a vehicle. We do not agree with the state's suggestion that an exception should be carved out based upon the possibility that a suspected weapon in that detainee's vehicle poses a `danger to others.'"
 {¶ 17} Smith argues that because the record does not demonstrate that the officers had determined to allow him to return to his car prior to Saunders' searching the lunge area, that search was impermissible underPerkins. The hearing transcript is silent on this issue, and *Page 6 
although the issue was argued on Smith's motion for reconsideration, the trial court did not address this issue.
 {¶ 18} In 2006, this court decided State v. Roberts, Montgomery App. No. 21221, 2006-Ohio-3042. The State referred to Roberts in opposing Smith's motion for reconsideration, but does not rely onRoberts in this court. Roberts also involved a lunge area search conducted while Roberts was outside a car in which he had been a passenger. We stated:
 {¶ 19} "Defendant argues that the search of the interior of the Lumina by the police officers was unlawful. The state argues that the police officers' belief that a drug transaction had taken place coupled with Defendant's movements inside the vehicle, were indicative of a gun either being hidden or retrieved. Thus, a search of the `lunge area' inside the vehicle was lawful. We again agree.
 {¶ 20} "Ohio courts, including this one, have long recognized that persons engaged in illegal drug activity are often armed with a weapon.State v. Evans, 67 Ohio St.3d 405, 413, 1993 Ohio 186, 618 N.E.2d162; State v. Taylor (1992), 82 Ohio App.3d 434, 612 N.E.2d 728;State v. Lindsey (June 23, 2000), Mont. App. No. 18073, 2000 Ohio App. LEXIS 2719. `Thus, the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officer to believe that the suspect is dangerous and the suspect may gain immediate control of weapons.' Michigan v. Long, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). As we have already concluded, the police officers had a reasonable suspicion that Defendant was involved in illegal drug activity. Furthermore, during *Page 7 
the execution of the traffic stop, officers observed the Defendant looking back over his shoulder in the direction of the police cruiser, and making furtive movements with his right hand, leaning forward. These movements by the Defendant coupled with the officers' belief that Defendant was involved in a drug transaction caused the officers concern for their own safety, not knowing if the Defendant was attempting to conceal or retrieve a weapon and that he may subsequently be permittedto return to the vehicle he was riding in. See Michigan v. Long, supra, at 1051, 1052. The search of the glove compartment of the vehicle was reasonable." (Emphasis ours.)
 {¶ 21} Roberts was decided without reference to Henderson orPerkins, possibly because whether Roberts should return to the automobile was not a consideration in that case. In any event,Roberts does appear to blur somewhat the bright line rule ofHenderson and Perkins.
 {¶ 22} We do not have to determine whether the lunge area search violated Henderson and Perkins in this case because Smith, the driver, had been stopped for two non-arrestable minor misdemeanors. See R.C.4513.241, 4513.05, 4513.99. As such, the officers had no choice but to issue citations to Smith for these offenses and let him go on his way. Given their reasonable, articulable suspicion that there might be a weapon in the car, the lunge area search was reasonable and permissible.
 {¶ 23} The assignments of error are overruled.
 III {¶ 24} The judgment will be affirmed.
 FAIN, J. and GRADY, J., concur. *Page 1