[Cite as *State v. Brown*, 2024-Ohio-5546.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2024-03-022 |
| | : | O P I N I O N |
| - vs - | | 11/25/2024 |
| | : | |
| ROBERT L. BROWN, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY MUNICIPAL COURT
Case Nos. 2023 CRB 2040(E) and 2023 CRB 2040(F)

Mark J. Tekulve, Clermont County Prosecuting Attorney, and Nicholas Horton, Assistant Prosecuting Attorney, for appellee.

W. Stephen Haynes, Clermont County Public Defender, and Robert F. Benintendi, Assistant Public Defender, for appellant.

**HENDRICKSON, J.**

{¶ 1}   Appellant, Robert L. Brown, appeals from his convictions and sentence in the Clermont County Municipal Court for carrying concealed weapons.

**Facts & Procedural Background**

{¶ 2}   On June 22, 2023, Deputy Jason Daniels, Deputy Jason Hanson, and Corporal Jessie Kidder from the Clermont County Sheriff's Office were dispatched to a

home on Cross Road in Newtonsville, Clermont County, Ohio on a report of a domestic dispute involving appellant. While the deputies were in route, they received information that appellant had left the residence in a tan GMC SUV. Deputy Daniels encountered appellant's SUV near Cross Road and began following the vehicle. Deputy Hanson proceeded to the Newtonsville home to speak with appellant's wife, the alleged victim of the domestic violence incident, appellant's daughter, and another individual who had observed the domestic dispute.

{¶ 3}   Before Deputy Daniels could initiate a traffic stop of appellant's vehicle, appellant pulled into a residential driveway and parked his SUV. Deputy Daniels followed, activating his cruiser's overhead lights. Appellant, talking on his cell phone, immediately exited his vehicle. Deputy Daniels exited his cruiser and approached appellant. Appellant told the deputy, "[My] daughter slapped [me]; it was self-defense." Appellant then proceeded to largely ignore the deputy, focusing on his phone call instead. Appellant circled around his vehicle and accessed his vehicle from the passenger side. Deputy Daniels told appellant to back away from the vehicle and questioned whether there were any weapons in the vehicle. Appellant responded by asking, "Why does that matter?" When appellant tried to access his vehicle a second time from the passenger side, Deputy Daniels backed appellant away from the vehicle before securing appellant in the rear seat of his cruiser.

{¶ 4}   After appellant was secured in Deputy Daniels' cruiser, Deputy Hanson contacted Deputy Daniels to advise him that appellant's wife had reported that appellant had a loaded firearm in his vehicle. Around this time, Corporal Kidder arrived at Deputy Daniels' location. Deputy Daniels gave Corporal Kidder a rundown of what had transpired, describing appellant's behavior in exiting the SUV right away and then trying to get back inside the passenger side of the vehicle as suspicious. Corporal Kidder did a

safety sweep of the interior of appellant's vehicle and found a loaded 45-caliber Taurus handgun in the center console underneath a hat. After the firearm was secured in Deputy Daniels' vehicle, Deputy Daniels questioned appellant about whether there were any other firearms in the vehicle. Appellant advised that there was one wedged between the front and middle seats. Deputy Daniels retrieved a loaded 45-caliber Ruger pistol from the area appellant described.

{¶ 5} Appellant was arrested that day and subsequently charged with one count of domestic violence in violation of R.C. 2919.25(A), a misdemeanor of the first degree, assault in violation of R.C. 2903.13(A)(1), a misdemeanor of the first degree, two counts of improper handling of firearms in a motor vehicle in violation of R.C. 2923.16(E)(1), misdemeanors of the second degree, and two counts of carrying concealed weapons in violation of R.C. 2923.12(A)(2), misdemeanors of the first degree.[1] He pled not guilty and filed a motion to suppress the firearms recovered from his vehicle as products of an unconstitutional search.

{¶ 6} An evidentiary hearing on appellant's motion to suppress was held on September 18, 2023. At that time, the state called Deputy Daniels, Deputy Hanson, and Corporal Kidder as witnesses. Deputy Daniels testified that at the time appellant was secured in the back of his cruiser, appellant was not under arrest. Rather, appellant "was under investigation with what happened. I was still waiting for . . . Deputy [Hanson] on the scene to give me feedback on what's happening there." Though Deputy Hanson relayed to Deputy Daniels that appellant's wife had indicated appellant had a loaded firearm in his SUV, Deputy Daniels clarified that there had been no allegation that

---

1. Appellant was charged by complaint with domestic violence, assault, and two counts of improper handling of firearms on June 23, 2023. He was charged by complaint with two counts of carrying concealed weapons on December 7, 2023.

appellant had used a firearm in the commission of the alleged domestic violence offense. Furthermore, according to Deputy Daniels, at the time Corporal Kidder arrived on scene and collected the loaded firearm from appellant's center console, appellant was still under investigation and no decision had been made as to whether appellant would be arrested.

{¶ 7} Corporal Kidder testified that when he searched appellant's vehicle for a firearm, he searched only the "wingspan of the vehicle, of the driver's seat," meaning anywhere that would have been accessible to appellant while sitting in the driver's seat. Corporal Kidder found the loaded Taurus handgun in the center console under a hat. At the time he searched appellant's vehicle, Corporal Kidder testified appellant was not under arrest but he was also not free to leave. He acknowledged on cross-examination, that appellant would not have been able to access his vehicle while secured in the back of Deputy Daniels' cruiser.

{¶ 8} Deputy Hanson testified that he responded to appellant's home on the report of a domestic dispute and made contact with appellant's wife, his daughter, and another individual who had seen the altercation between the parties. Deputy Hanson indicated he had been advised that appellant's daughter had smacked appellant and appellant had responded by slapping his daughter back. When appellant's wife tried to intervene, appellant punched her in the face, causing visible injuries to her lips. While obtaining appellant's wife's statement, appellant's wife indicated to Deputy Hanson that appellant had a loaded firearm in his vehicle. However, appellant's wife did not indicate that the firearm had been used against her during the domestic dispute.

{¶ 9} Following the deputies' testimony, the trial court heard argument from both the state and appellant on the merits of appellant's motion to suppress. The state advanced three reasons why the search of appellant's vehicle comported with constitutional protections prohibiting unreasonable searches. First, the state argued the

search was justified for the safety of deputies as appellant was not under arrest at the time of the search and he could have been permitted to return to his vehicle where the gun would have been accessible to him. Second, the state argued that based on appellant's wife's statement to Deputy Hanson that appellant had a loaded firearm in the vehicle, the deputies had probable cause to search the vehicle without a warrant due to the automobile exception to the warrant requirement. Finally, the state argued the search was constitutional as the guns would have eventually been discovered in the course of an inventory search of the vehicle following appellant's arrest for domestic violence.

{¶ 10} In response, appellant argued that the search was not a search incident to arrest as, at the time of the search, he was already secured in Deputy Daniels' cruiser, there was no evidence of the crime of domestic violence in the vehicle, and the firearms were not connected to the crime of domestic violence. Appellant further argued that the search was not done for purposes of officer safety as appellant was already secured in Deputy Daniels' cruiser and he had no access to the weapons. As for the state's claim that the firearms were subject to discovery during an inventory search, appellant argued the state had failed to present any evidence that appellant's vehicle was towed or subjected to an inventory search. Finally, appellant contended that it was not a crime in the State of Ohio to have firearms in a motor vehicle, and he argued the officers should have obtained either a warrant or his consent before searching the vehicle.

{¶ 11} The trial court took the matter under advisement, and on October 23, 2023, issued a decision denying appellant's motion to suppress. The court analyzed the issue as follows:

> This case involves whether the officers could search the vehicle even if those weapons were not involved in the underlying crime and even if having weapons in a vehicle is not a crime. In *Michigan v. Long,* 463 U.S. 1032 . . . (1983), the United States Supreme Court upheld a limited search of

the area in the car from which a motorist may obtain a weapon provided that (1) a reasonable and articulable basis that the motorist may be armed and dangerous, and (2) the weapon would be accessible to the motorist once he is allowed to get back into the vehicle. . . .

In the case before the court, [Deputy] Daniels testified that [appellant] was acting suspiciously by turning abruptly into a stranger's driveway, immediately getting out of the vehicle, refusing to answer questions about whether there were any weapons in his vehicle and attempting to get into his vehicle on two separate occasions while ignoring instructions of the officer. In addition, [Deputy] Hanson testified that, during his investigation of the domestic dispute in which he observed physical injuries, [appellant's] Wife informs him that [appellant] has a loaded gun with him. [Deputy] Hanson states the importance of "getting firearms out of the equation" in domestic disputes.

Further, [Corporal] Kidder testified that the investigation was still being conducted when he performed the search and Defendant could be returned to the vehicle. He then performed a limited ("wingspan") search of the vehicle in the area where the weapon would be accessible to Defendant once he was returned to the vehicle. [Corporal] Kidder had independent probable cause to believe the vehicle contained a weapon which would be accessible to [appellant] once he was returned to the vehicle.

In consideration of the evidence presented, arguments of counsel, and an analysis of current statutory law and case law, [Appellant's] Motion to Suppress is denied in its entirety.

{¶ 12} The matter proceeded to a bench trial. However, prior to trial commencing, the state dismissed the domestic violence and assault charges. The state called Deputy Daniels and Corporal Kidder as witnesses and submitted into evidence a certified copy of appellant's 2017 conviction for assault. Following the state's presentation of its case-in-chief, appellant moved for acquittal pursuant to Crim.R. 29, and the trial court granted appellant's motion with respect to the two counts of improper handling of firearms in a motor vehicle but denied the motion with respect to the two counts of carrying concealed weapons. Appellant then rested his defense without calling any witnesses. The court

- 6 -

found appellant guilty of both counts of carrying concealed weapons.

{¶ 13} Appellant was sentenced to 90 days in jail, with 86 days suspended, and to two years of non-reporting probation. As a condition of his probation, the court ordered that appellant was not to "use, possess, obtain, or carry any deadly weapons, including firearms or ammunition." The court further ordered that the two firearms and related ammunition seized from appellant's vehicle be forfeited.

{¶ 14} Appellant appealed, raising three assignments of error.

**Motion to Suppress**

{¶ 15} Assignment of Error No. 1:

{¶ 16} THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS.

{¶ 17} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Cochran*, 2007-Ohio-3353, ¶ 12 (12th Dist.). "When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence in order to resolve factual questions and evaluate witness credibility." *State v. Harsh*, 2014-Ohio-251, ¶ 9 (12th Dist.). Therefore, when reviewing the denial of a motion to suppress, a reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Oatis*, 2005-Ohio-6038, ¶ 10 (12th Dist.). "However, an appellate court 'independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard.'" *State v. Vunda*, 2014-Ohio-3449, ¶ 14 (12th Dist.), quoting *Cochran* at ¶ 12.

{¶ 18} Appellant argues the trial court erred in relying on the "limited protective search of a motor vehicle exception" recognized in *Michigan v. Long*, 463 U.S. 1032, to

deny his motion to suppress. Appellant maintains that this exception to the warrant requirement was inapplicable as, at the time of Corporal Kidder's protective search of appellant's vehicle, there was no threat to officer safety as appellant was secured in Deputy Daniels' cruiser, appellant did not have access to his vehicle or any firearm located therein, and the deputies had not decided whether he would be permitted to return to his vehicle or whether he would be arrested.

{¶ 19} "Both the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution protect individuals from unreasonable searches and seizures." *State v. Dunn*, 2022-Ohio-4136, ¶ 16 (12th Dist.). "Any searches or seizures that occur 'outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *Id.*, quoting *Katz v. United States*, 389 U.S. 347, 357 (1967). One exception to this rule is found in *Terry v. Ohio*, 392 U.S. 1, 27 (1968), wherein the United States Supreme Court held that a police officer may pat down an individual for weapons "where [the officer] has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.*

{¶ 20} The Supreme Court's holding in *Terry* has been extended to protective searches of automobiles. *See Michigan v. Long*, 463 U.S. 1032 (1983). In *Long,* the Supreme Court held that "the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the

officer in believing the suspect is dangerous and the suspect may gain immediate control of weapons." *Id.* at 1049, quoting *Terry* at 21. "If, while conducting a legitimate *Terry* search of the interior of the automobile, the officer should . . . discover contraband other than weapons, he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances." *Id.* at 1050.

{¶ 21} In the present case, the trial court relied on *Long* in finding the warrantless search of appellant's vehicle justified. The court reasoned that at the time of Corporal Kidder's search of the vehicle, appellant was not under arrest and could have been permitted to return to his vehicle, thereby giving him access to the loaded firearm that appellant's wife had indicated was in the vehicle.

{¶ 22} Appellant argues the trial court erred in relying on *Long* to justify the search. He argues the facts of the present care are more like those in *State v. Perkins*, 145 Ohio App.3d 583 (2d Dist. 2001), and *State v. Parrish*, 2002-Ohio-3275 (10th Dist.), cases where protective searches of automobiles were found unlawful given that the motorists were already secured in an officer's cruiser, there was no threat that the motorist could gain immediate control over a weapon, and the officers had not made a decision to return the motorists to their respective vehicles.

{¶ 23} In *Perkins*, officers stopped the defendant's vehicle to issue a citation for failing to maintain an assured clear distance. *Perkins* at 584. As the defendant's vehicle was being stopped, the driver "dipped his body straight down towards the driver floorboard. This furtive movement concerned [the officer] because in his experience such movement often involves the concealing of a weapon." *Id.* Once stopped, the defendant was asked to produce his license, registration, and proof of insurance. As the defendant opened the glove box to retrieve those items, an officer saw marijuana in the glove box. *Id.* The defendant was removed from the vehicle and secured in the back of the officer's

police cruiser. *Id.* at 585. The officer returned to the defendant's vehicle, searched under the driver's seat, and discovered a .38-caliber revolver. *Id.* The defendant was arrested for carrying a concealed weapon and was further cited for possession of marijuana and the traffic violation. *Id.* The defendant moved to suppress evidence of the firearm, and the trial court granted the motion, finding that "the exception to the warrant requirement did not apply because at the time of the search [the officer] had not determined that [the defendant] was to return to his vehicle, thus there was no reason to suspect that [the defendant] would retrieve a weapon from his vehicle." *Id.* at 586.

{¶ 24} The state appealed and the Second District Court of Appeals affirmed the trial court's decision. The court stated, "there is no justification in permitting warrantless searches where it has not been determined that a detainee may return to a vehicle." *Id.* at 587.

> "We do find that a police officer may search the interior of an automobile when the officer reasonably suspects that the individual has a weapon secreted in the automobile (as in the case of a furtive gesture) and the officer has made the determination that he or she is going to the allow the individual to return to the vehicle. In that case, a search for the officer's safety is justified because the officer has confirmed that he or she is going to allow the individual to re-enter the vehicle wherein the individual could gain immediate control over a weapon. *Until a police officer has finally decided to return the individual to the car, however, safety reasons cannot be used to justify the search*."

(Emphasis added.) *Id.,* quoting *State v. Henderson*, 1997 Ohio App. LEXIS 5017, *11 (2d Dist. Nov. 7, 1997).

{¶ 25} In *Parrish*, officers responded to an area where there had been reports of "shots fired." *Parrish*, 2002-Ohio-3275, ¶ 2. Officers stopped the defendant's vehicle as it was pulling out of a parking space. *Id.* at ¶ 3. The defendant was removed from his vehicle, patted down, and placed in the back of a police cruiser. *Id.* at ¶ 4. Officers looked

inside appellant's vehicle and saw an open liquor bottle on the passenger seat. *Id.* at ¶ 5. Officers then searched the driver's side of the vehicle and found a loaded .9 mm weapon under the driver's seat. *Id.* Shell casings matching those remaining in the weapon were found in the area, approximately 50 feet from where the defendant had been stopped. *Id.* The defendant was arrested after the weapon was found in his vehicle and charged with carrying a concealed weapon. He moved to suppress the weapon, but his motion was denied. He pled no contest to the charge of carrying a concealed weapon and challenged the denial of his motion to suppress on appeal. *Id.* at ¶ 9-11.

{¶ 26} The Tenth District found the trial court erred in denying the defendant's motion to suppress, concluding the state failed to establish the protective search or probable cause exceptions to the warrant requirement justified the search of the defendant's vehicle. *Id.* at ¶ 13-31. In finding the search unlawful, the Tenth District stated, in relevant part, the following:

> [W]e find that the search of defendant's vehicle by Officers Berb and Poliseno was not justified as a protective search under *Long* or *Bobo*.[2] The purpose of this exception to the warrant requirement is to allow a police officer to protect himself or herself where the officer reasonably suspects that the individual is dangerous and may gain immediate control over a weapon. *Henderson,* supra. In the instant case, defendant was patted down at the time Officer Myers ordered him to exit his vehicle. No weapons were found. Officer Myers then placed defendant in the back of his police cruiser. There was no danger that defendant would gain immediate control over a weapon hidden under the front seat of the vehicle because Officer Myers had secured defendant in his police cruiser, and defendant was unable to exit the cruiser.

---

2. In *State v. Bobo*, 37 Ohio St.3d 177 (1988), paragraph two of the syllabus, the Ohio Supreme Court recognized that "[w]here a police officer, during an investigative stop, has a reasonable suspicion that an individual is armed based on the totality of the circumstances, the officer may initiate a protective search for the safety of himself and others." In *Bobo*, officers had seen the defendant bend down as if to place something underneath the front seat of the car. This furtive movement combined with the late hour, the high-crime area where the investigative stop occurred, and the fact that the officers were out of the vehicle, justified a search of the defendant's vehicle for weapons. *Id.* 180.

Further, there is no testimony suggesting that the police officers had determined that they were going to permit defendant to re-enter the vehicle. A police officer may search the interior of a vehicle when the officer reasonably suspects that the individual has a weapon concealed in the vehicle, and the officer has made the determination that he or she is going to permit the individual to return to the vehicle. *Id*. In such a case, a search for the officer's safety is justified because the officer has confirmed that he or she is going to permit the individual to re-enter the vehicle wherein the individual could gain immediate control over a weapon. However, until a police officer has finally decided to return the individual to the vehicle, safety reasons cannot be used to justify the search. *Id*.

*Parrish* at ¶ 25-26.

{¶ 27} In the present case, the evidence is uncontroverted that at the time Corporal Kidder searched appellant's vehicle and discovered the first firearm, the domestic dispute remained under investigation and no decision had been made as to whether appellant would be permitted to return to his vehicle. Appellant remained secured in the back of Deputy Daniels' cruiser, unable to access his vehicle or gain immediate control of any weapons therein. As such, the exception recognized in *Michigan v. Long*, supra, was not applicable.

{¶ 28} The state argues that even if the exception in *Long* did not support the search, the search was nonetheless valid under the automobile exception to the warrant requirement as "the officers had probable cause to believe evidence of a crime would be found in the vehicle." Relying on the information provided by appellant's wife indicating that appellant had a loaded firearm in the vehicle, the state argues the deputies had probable cause to believe the vehicle contained evidence (i.e., a loaded gun) that appellant had violated R.C. 2923.16(B) or (E)(1).

{¶ 29} The automobile exception to the warrant requirement provides that "warrantless searches of motor vehicles are permitted if police have probable cause to believe that the vehicle contains evidence relevant to a crime and that exigent circumstances exist necessitating a search or seizure." *State v. Maffey*, 2021-Ohio-2460, ¶ 21 (12th Dist.), citing *Carroll v. United States*, 267 U.S. 132, 149 (1925). The mobility of automobiles creates the exigent circumstance and is the traditional justification for this exception to the Fourth Amendment's warrant requirement. *California v. Carney*, 471 U.S. 386, 391 (1985); *State v. Mills*, 62 Ohio St.3d 357, 367 (1992).

{¶ 30} "As it relates specifically to an automobile search, probable cause is 'a belief reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction.'" *State v. Durham*, 2013-Ohio-4764, ¶ 32 (12th Dist.), quoting *State v. Popp*, 2011-Ohio-791, ¶ 27 (12th Dist.). *See also State v. Kessler*, 53 Ohio St.2d 204, 208 (1978). "The determination of probable cause is fact-dependent and turns on what the officer knew at the time he conducted the search." *State v. Fritz*, 2020-Ohio-5231, ¶ 33 (12th Dist.). "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 825 (1982).

{¶ 31} The state maintains that the deputies had probable cause to search appellant's vehicle as the deputies had reason to believe appellant had violated R.C. 2923.16(B) or (E)(1). Under R.C. 2923.16(B), "[n]o person shall knowingly transport or have a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the operator . . . without leaving the vehicle." A violation of division (B) of R.C. 2923.16 is a felony of the fourth degree. R.C. 2923.16(I). R.C. 2923.16(E)(1) in turn provides that "[n]o person who has been issued a concealed handgun license . . . who is the driver . . .

of a motor vehicle that is stopped as a result of a traffic stop or a stop for another law enforcement purpose . . . and who is transporting or has a loaded handgun in the motor vehicle . . . shall . . . [b]efore or at the time a law enforcement officer asks if the person is carrying a concealed handgun, knowingly fail to disclose that the person then possesses or has a loaded handgun in the motor vehicle . . . ."  The failure to disclose a concealed handgun in violation of division (E)(1) is a misdemeanor of the second degree.  R.C. 2923.16(I).

{¶ 32} We find that at the time Corporal Kidder searched appellant's vehicle for a firearm, he had probable cause to believe the vehicle contained evidence relevant to the crime of improperly handling a firearm in a motor vehicle in violation of R.C. 2923.16(B) and (E)(1).  Specifically, the corporal had information provided by appellant's wife that appellant had a loaded gun in the vehicle.  Corporal Kidder also had information from Deputy Daniels that appellant had refused to answer his question about whether there were firearms in the vehicle.  Rather than answer Deputy Daniels' question, appellant had asked, "Why does that matter?"  As Corporal Kidder had probable cause to believe appellant's vehicle contained evidence of the crime of improperly handling a firearm in a motor vehicle, his search of the vehicle was justified under the automobile exception to the warrant requirement.  The trial court, therefore, did not err in denying appellant's motion to suppress.  Appellant's first assignment of error is overruled.

**Forfeiture**

{¶ 33} Assignment of Error No. 2:

{¶ 34} THE TRIAL COURT'S ORDER OF FORFEITURE IS CONTRARY TO LAW.

{¶ 35} In his second assignment of error, appellant contends the trial court erred at sentencing when it ordered the two firearms and related ammunition discovered in his motor vehicle forfeited.  Appellant maintains that the trial court failed to comply with the

statutory provisions governing criminal forfeiture. The state has conceded error.

{¶ 36} R.C. Chapter 2981 governs both civil and criminal forfeitures of contraband, proceeds, and criminal instrumentalities. *See* R.C. 2981.02(A). Upon the commission of an offense, "[a] law enforcement officer may seize property that the officer has probable cause to believe is property subject to forfeiture." R.C. 2981.03(A)(2). A prosecuting attorney may then pursue forfeiture of seized property in a criminal proceeding under R.C. 2981.04, a civil proceeding under R.C. 2981.05, or both. R.C. 2981.03(F); *State v. Humphrey*, 2022-Ohio-2456, ¶ 7 (12th Dist.). Civil forfeiture is initiated by filing "a complaint requesting an order that forfeits the property to the state or a political subdivision." R.C. 2981.05(A).

{¶ 37} As pertinent here, R.C. 2981.04(A)(1) provides that property may be forfeited in a criminal proceeding "only if" the defendant is convicted of an offense and the complaint, indictment, or information charging the offense contains a forfeiture specification under R.C. 2941.1417. Absent a forfeiture specification in the charging instrument, property may still be subject to forfeiture if it was "not reasonably foreseen to be subject to forfeiture at the time of filing the indictment" and "the prosecutor, upon discovering the property to be subject to forfeiture, gave prompt notice of this fact to the alleged offender * * * under Criminal Rule 7(E) . . ." through the bill of particulars. R.C. 2981.04(A)(2).

{¶ 38} Appellant was convicted of two counts of carrying a concealed weapon in violation of R.C. 2923.12(A)(2). The complaints charging appellant with these offenses do not contain a specification that the two firearms retrieved from appellant's vehicle were subject to forfeiture. Furthermore, as the state also did not file a bill of particulars, notice of forfeiture was not provided in accordance with Crim.R. 7(E). In short, appellant was not provided with notice that the firearms and ammunition recovered from his vehicle were

subject to forfeiture.

{¶ 39} In light of the foregoing, we find that the trial court had no authority to order the forfeiture of the firearms and ammunition confiscated from appellant's vehicle. *See Humphrey* at ¶ 11; *State v. Little*, 2014-Ohio-4756, ¶ 34 (12th Dist.). Appellant's second assignment of error is sustained and that portion of appellant's sentence ordering the forfeiture of the "Rugar P97 DC .45 Cal. Serial #663-02842, one magazine & 8 bullets, Taraus GZL .40 Cal. Serial #AEL154364, one magazine & 8 bullets" is reversed and vacated.

**Ineffective Assistance of Counsel**

{¶ 40} Assignment of Error No. 3:

{¶ 41} APPELLANT'S TRIAL COUNSEL WAS INEFFECTIVE.

{¶ 42} In his third assignment of error, appellant maintains his trial counsel was ineffective for failing to object to the forfeiture of the firearms. However, given our resolution of the second assignment of error, we find this assignment of error is moot and need not be addressed. App.R. 12(A)(1)(c).

{¶ 43} Judgment affirmed in part, reversed in part, and the order of forfeiture vacated.

BYRNE, P.J., and M. POWELL, J., concur.