The STATE of Ohio, Appellee,

v.

JOHNSON, Appellant.

[Cite as *State v. Johnson*, 186 Ohio App.3d 648, 2010-Ohio-840.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 23415.

Decided March 5, 2010.

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Bryan K. Penick, for appellant.

GRADY, Judge.

{¶ 1} Defendant, Calvin Johnson, appeals from his conviction and sentence for possession of crack cocaine.

{¶ 2} On November 4, 2008, at 9:20 p.m., Dayton Police Officer Richard Taylor was working at the Dayton RTA hub bus stop at Third and Main Streets in Dayton, when Officer Mike August pulled up in his cruiser and advised Taylor that he had just driven past the bus stop at the corner of Fourth and Main Streets, one block away, and that a group of men who had gathered there appeared to be smoking marijuana. The men were huddled together in a circle, and August saw smoke in the air and smelled a very strong odor of marijuana. August asked Taylor and his partner to walk to Fourth and Main Street and investigate his suspicions.

{¶ 3} Taylor and his partner walked to Fourth and Main Street. As they approached that intersection they observed three or four men at the bus stop. The men were not huddled together. Instead, two were standing and one or two were seated. As Taylor approached, he detected the odor of burnt marijuana, with which he was familiar from his training and experience. As Taylor got closer, the smell of burnt marijuana grew stronger. By the time Taylor reached Fourth and Main Streets, the odor of burnt marijuana was very strong.

{¶ 4} Taylor approached one of the men, defendant Johnson, explained why he was there, asked to see defendant's hands, and informed defendant that he was going to pat him down for weapons. The pat down did not produce weapons or contraband. Defendant was wearing a baseball hat. Taylor knew from his training and experience that baseball hats are common hiding places for drugs, and he was concerned that if he did not search defendant's hat, defendant would leave the scene and any marijuana in his possession would be lost. Taylor removed defendant's baseball cap, and discovered a plastic baggie with a small amount of crack cocaine inside. Taylor then seized the drugs he found and arrested defendant for possession of cocaine.

{¶ 5} Defendant was indicted on one count of possession of crack cocaine, less than one gram, a felony of the fifth degree. R.C. 2925.11. Defendant filed a motion to suppress the evidence. Following an evidentiary hearing, the trial court overruled defendant's motion to suppress. Defendant thereafter pleaded no contest to the charge and was found guilty. The trial court sentenced defendant to nine months in prison.

{¶ 6} Defendant appealed to this court from his conviction and sentence.

ASSIGNMENT OF ERROR

{¶ 7} "The trial court erred in overruling appellant's motion to suppress the evidence discovered as a result of the illegal search and seizure of appellant."

{¶ 8} Taylor testified that he removed defendant's hat to search for drugs, and the trial court found that that was the purpose of the search. The court further found that "Officer August did see a cloud of smoke when he was in the area," but that "[o]ther than the smell of marijuana, nothing else aroused [Taylor's] suspicion." The court then found that Taylor had probable cause to remove defendant's hat to search his person for drugs on the authority of *State v. Moore* (2000), 90 Ohio St.3d 47, 734 N.E.2d 804.

{¶ 9} In *Moore*, an officer had stopped a vehicle driven by the defendant for a traffic violation. When the defendant rolled down the driver's window, the officer detected a strong odor of marijuana coming from inside the vehicle. The officer asked the defendant to step out, and when he did, the officer observed that an odor of marijuana also emanated from the defendant. The officer searched the defendant and found drug paraphernalia in his pocket. A search of the vehicle revealed a burnt marijuana cigarette in its ashtray. The trial court granted the defendant's motion to suppress, holding that the odor of marijuana, absent any other tangible evidence to justify the search, did not permit the warrantless search the officer conducted. The court of appeals reversed, holding that the odor of marijuana was sufficient under the circumstances. That decision was certified to the Supreme Court on a finding that a conflict existed with a holding of another appellate district. The Supreme Court affirmed the judgment of the court of appeals in *Moore*, holding:

{¶ 10} "The appellate court certified the following issue for our review and resolution: 'Is the odor of burnt marijuana, alone, sufficient to provide probable cause to search a defendant's motor vehicle?' We answer the certified question in the affirmative and hold that the smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to search a motor vehicle, pursuant to the automobile exception to the warrant requirement. There need be no other tangible evidence to justify a warrantless search of a vehicle.

{¶ 11} "* * * We also hold that exigent circumstances existed to justify the warrantless search of defendant's person once [the officer] had probable cause based upon the odor of marijuana detected on the defendant." *Moore*, 90 Ohio St.3d at 48, 734 N.E.2d 804.

{¶ 12} The opinion in *Moore* pointed out that probable cause has been defined as "a reasonable ground for belief of guilt," and "must be based upon objective facts that would justify issuance of a warrant by a magistrate." Id. at 49, 734 N.E.2d 804. The court noted that "[t]he United States Supreme Court has long acknowledged that odors may be persuasive evidence to justify the issuance of a search warrant." Id., citing *Johnson v. United States* (1948), 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436.

{¶ 13} *Johnson* involved the odor of burning opium coming from inside a hotel room. *Moore* also cited two other cases in which probable cause to search was found when an officer who was experienced and qualified to recognize the odor of marijuana detected the odor coming from (1) inside an automobile and (2) from a particular bag on a bus. The *Moore* court emphasized that its holding was based on the totality of the circumstances, which in that instance, justified the warrantless search of the defendant's person "[b]ecause marijuana and other narcotics are easily and quickly hidden or destroyed, [and] a warrantless search may be justified to preserve evidence." Id. at 52, 734 N.E.2d 804. The court reasoned that those are "compelling reasons" or "exceptional circumstances" that would "justify an intrusion without a warrant." Id.

{¶ 14} The state argues that the warrantless search finds further justification in *Maryland v. Pringle* (2003), 540 U.S. 366, 124 S.Ct. 795, 157 L.Ed.2d 769. *Pringle* also involved the stop of a vehicle for a traffic violation. In the vehicle were the driver, Partlow, and two passengers: Pringle, who was in the front passenger seat, and Smith, who was seated in the rear. When the driver opened the glove box to obtain his vehicle's registration, a large wad of cash was seen inside. The driver consented to a search of his vehicle. The search revealed five plastic bags containing cocaine that were concealed behind a back-seat armrest. When none of the three men in the vehicle would admit ownership of the drugs, the officer arrested all three. Later, at the police station, Pringle confessed that the drugs were his.

{¶ 15} Pringle moved to suppress evidence of his confession, arguing that it was the fruit of an arrest that was itself illegal for lack of probable cause. The trial court denied the motion, and Pringle was convicted of possession with intent to distribute cocaine. The Maryland Court of Appeals reversed, holding that absent facts tending to show Pringle's knowledge and dominion or control over the drugs, the fact that they were behind the back-seat armrest of a vehicle in which he was a front-seat passenger was insufficient to demonstrate probable cause for Pringle's arrest for possession.

{¶ 16} On review, the United States Supreme Court reversed. The court pointed out that it was uncontested that the officer who found the drugs had probable cause to believe that a crime had been committed, and that "[t]he sole question is whether the officer had probable cause to believe that Pringle committed that crime." 540 U.S. at 370, 124 S.Ct. 795, 157 L.Ed.2d 769. The court wrote:

{¶ 17} "To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively

reasonable police officer, amount to' probable cause, *Ornelas*,[1] *supra*, at 696, 116 S.Ct. 1657, 134 L.Ed.2d 911.

{¶ 18} "In this case, Pringle was one of three men riding in a Nissan Maxima at 3:16 a.m. There was $763 of rolled-up cash in the glove compartment directly in front of Pringle. Five plastic glassine baggies of cocaine were behind the backseat armrest and accessible to all three men. Upon questioning, the three men failed to offer any information with respect to the ownership of the cocaine or the money.

{¶ 19} "We think it an entirely reasonable inference from these facts that any or all three of the occupants had knowledge of, and exercised dominion and control over, the cocaine. Thus, a reasonable officer could conclude that there was probable cause to believe Pringle committed the crime of possession of cocaine, either solely or jointly." 540 U.S. at 371–372, 124 S.Ct. 795, 157 L.Ed.2d 769.

{¶ 20} The defendant in *Pringle* had relied on *Ybarra v. Illinois* (1979), 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238, in which police who were authorized by a warrant to search a tavern also searched the patrons and found incriminating evidence on the defendant, who was one of the patrons. *Ybarra* held: "[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." 444 U.S. at 91, 100 S.Ct. 338, 62 L.Ed.2d 238, citing *Sibron v. New York* (1968), 392 U.S. 40, 62–63, 88 S.Ct. 1889, 20 L.Ed.2d 917. The *Pringle* court rejected application of that holding, stating:

{¶ 21} "This case is quite different from *Ybarra*. Pringle and his two companions were in a relatively small automobile, not a public tavern. In *Wyoming v. Houghton*, 526 U.S. 295, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999), we noted that 'a car passenger—unlike the unwitting tavern patron in *Ybarra*—will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing.' *Id.*, at 304–305, 119 S.Ct. 1297, 143 L.Ed.2d 408. Here we think it was reasonable for the officer to infer a common enterprise among the three men. The quantity of drugs and cash in the car indicated the likelihood of drug dealing, an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him."

{¶ 22} The *Pringle* court also distinguished the facts in *Pringle* from those in *United States v. DiRe* (1948), 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210, in which an informant told police that one Buttitta would provide the informant with

---

1. *Ornelas v. United States* (1996), 517 U.S. 690, 695, 116 S.Ct. 1657, 134 L.Ed.2d 911.

counterfeit gasoline-ration coupons at a particular time and place. When police arrived there, they found the informant in the rear seat of a car, holding the coupons. Buttitta was in the driver's seat, and DiRe was in the front passenger seat. The informant told the officers that Buttitta had given him the coupons. Police arrested all three men. The Supreme Court held that the officers lacked probable cause to arrest DiRe because the officers had no information implicating DiRe and "[a]ny inference that everyone on the scene of a crime is a party to it must disappear if the Government informer singles out the guilty person." 332 U.S. at 594, 68 S.Ct. 222, 92 L.Ed. 210.

{¶ 23} LaFave is critical of the holding in *Pringle*, especially with respect to its "any or all" rationale regarding the existence of probable cause. LaFave points out that the rationale is difficult to reconcile with the holding in *DiRe*, except that when the suspected offense involves an "act visibly criminal," then chances are greater that a companion of the offender is something more than a mere bystander. He adds: "But even that well-established principle does not provide a definitive solution to the problem at hand [in *Pringle* ], for though mere presence will not suffice to show complicity beyond a reasonable doubt, it might still be contended that such conduct should be enough to establish *probable* complicity and thus grounds to arrest." LaFave, Search & Seizure (4th Ed.2004), Section 3.6(C). The issue that complicity presents is whether the circumstances of a defendant's association with others "indicate a fair probability of his complicity" in a crime the others are committing. Id. Such circumstances may include the short span of time between the crime and the defendant's presence on the scene, his continuous association with the group, and whether it was possible for the criminal conduct to have occurred without the defendant's knowledge. Id.

█ {¶ 24} In the present case, the trial court found that the strong odor of marijuana that Taylor smelled in the air created a reasonable and articulable suspicion that one or more of the three or four men at the bus stop had been smoking marijuana. We agree. Further, while that suspicion authorized defendant's detention in order to investigate his implication in the suspected criminal activity, that mere suspicion did not authorize a search of the suspect's person for marijuana. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. For that, probable cause to believe he was in possession of contraband is required. Id.

█ {¶ 25} Defendant's presence at the location where the odor of marijuana was in the air implicated him in the suspected crime, if only by complicity, on the view that smoking marijuana is an act that is visibly criminal. However, and unlike the three men in *Pringle* who were each implicated directly in possession of drugs that police saw in their car, defendant's particular complicity did not create an implication that he actually possessed drugs. Also, unlike the men in

*Pringle* who shared the same car, defendant and the other men who were standing at the public bus stop at Fourth and Main Streets in downtown Dayton were not engaged in conduct from which a common enterprise is reasonably inferred. Finally, and unlike in *Moore*, where the defendant was in a car that smelled of marijuana and smelled of marijuana himself, defendant and the other men were in a public space. A strong odor of marijuana was in the open air, but that fact did not create probable cause to believe that defendant was in possession of marijuana, absent some additional indication, which the trial court found was lacking. Defendant's situation was more akin to that of the bar patrons in *Ybarra*, and in that case, the Supreme Court held that mere propinquity to a crime is insufficient to create probable cause to believe the accused engaged in it. Therefore, probable cause to search defendant's person for drugs was lacking, and the trial court erred when it denied defendant's motion to suppress the evidence that was seized from his person. *Terry*.

{¶ 26} The assignment of error is sustained. The final judgment from which the appeal was taken is reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

BROGAN and FAIN, JJ., concur.