[Cite as *State v. Dudley*, 2012-Ohio-960.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 24904 |
| Plaintiff-Appellant | : | |
| | : | Trial Court Case No. 2011-CR-1044 |
| v. | : | |
| | : | |
| MICHAEL M. DUDLEY | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 9th day of March, 2012.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by JOHNNA M. SHIA, Atty. Reg. #0067685, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellant

ELIZABETH C. SCOTT, Atty. Reg. #0076045, 120 West 2nd Street, Suite 703, Dayton, Ohio 45402
        Attorney for Defendant-Appellee

. . . . . . . . . . . . .

HALL, J.

{¶ 1}    The State of Ohio appeals, pursuant to R.C. 2945.67(A) and Crim.R. 12(K), from the trial court's decision, order, and entry sustaining defendant-appellee Michael Dudley's motion to suppress evidence.

{¶ 2}     In its sole assignment of error, the State contends the trial court erred in suppressing evidence obtained during a traffic stop of Dudley's vehicle.

{¶ 3}     The facts underlying the present appeal are set forth in the trial court's suppression ruling as follows:

On or about January 27, 2011, Officer Ron Smith of the Trotwood Police Department was working in the City of Dayton with Officer Mat Barnes as part of the Citizen Initiative to Reduce Gun Violence (CIRV) Task Force. Officer Smith was in a marked cruiser and wearing the uniform of the day. At approximately 1:30 p.m., he was patrolling the area of Grand Avenue in Dayton View.

As he was driving westbound on Grand Avenue, he spotted a motor vehicle that he believed had excessive window tint. As a result, he could not see into the vehicle. The vehicle was stopped after it turned southbound onto Broadway. As he followed the vehicle, Smith ran the license plate. It was determined that the registered owner was a female.

Smith stopped the vehicle and walked to the driver's side window. As he approached the vehicle, Smith stated that the driver side front and rear windows appeared to be too dark. In fact, he thought the driver was a woman. In actuality, the sole occupant of the vehicle was a man.

The driver rolled down his window and Smith introduced himself. Smith said that he smelled the odor of burnt marijuana and noted that he knew the smell because he had made many traffic stops where the smell of burned marijuana was noticeable.

Smith explained the reason for the stop and asked Dudley to get out of the car. The evidence revealed that at this time and at all times during the stop that Dudley was compliant. Further, it was determined that at no time did Dudley make any furtive movements or attempt to hide anything.

Smith asked for and Dudley produced a valid Ohio driver's license. When asked if he had any weapons on him, Dudley turned toward the vehicle and assumed the frisk position. Smith asked Dudley if he could conduct a pat-down and Dudley said yes. Smith found no weapons on Dudley as a result of the pat-down.

Smith then asked Dudley to step behind the vehicle as he ran Dudley's information through LEADS. The search revealed that Dudley had no outstanding warrants. As this point, Smith did not issue a citation for the window tint; instead he decided to search the vehicle based upon detecting the odor of marijuana. The search revealed some marijuana seeds and residue in the front seat area. Neither the residue nor the seeds were collected. Dudley was not issued a citation for the window tint violation or the marijuana violation at this time.

Next Smith asked Dudley if he was on probation or parole. Dudley stated that he was on probation for trafficking in crack cocaine. Smith asked him if he had any crack on him. Dudley replied that he had marijuana on him and gave Smith a clear plastic baggie with a small amount of marijuana in it,

approximately 12 to 14 grams in weight. Smith decided to detain Dudley for further investigation.

Smith conducted another search of Dudley and found a baggie of crack cocaine inside his coat pocket. Dudley was put in the back of the cruiser and given oral *Miranda* rights warnings. Dudley advised Smith that he understood the rights and had no questions. He agreed to waive the rights and talked to the officer. By this time a detective arrived on the scene to take Dudley to jail. Dudley was then given a citation for the window tint but not for the possession of marijuana.

(Doc. #12 at 1-3).

**{¶ 4}** Based on the drugs found inside his coat pocket, Dudley was indicted on one count of possession of crack cocaine in an amount less than one gram, a fifth-degree felony. In a motion to suppress the crack cocaine, Dudley argued: (1) that he was not subject to arrest for minor-misdemeanor marijuana possession, (2) that Smith unlawfully prolonged the traffic stop to conduct a "fishing expedition," and (3) that the traffic stop, detention, search, and arrest were pretextual and unlawful.

**{¶ 5}** In sustaining Dudley's motion, the trial court reasoned as follows:

* * * This Court finds that Officer Smith acted reasonably and with[in] the parameters of the Fourth Amendment when he stopped Michael Dudley on January 27, 2011. The Court finds that he had a reasonable and articulable suspicion that the driver of the motor vehicle had committed a traffic offense by driving a car whose window contained an illegal amount of window tint.

The Court finds that he was privileged to stop the vehicle to question the driver about the tint.

The next sequence of events demonstrated that the Defendant had a valid driver's license and that he cooperated with the police officer's demands to conduct a pat-down and search his vehicle. The results of these actions and the LEADS record check revealed no evidence of serious criminal behavior. Dudley had no outstanding warrants and, at best, could only be cited for the vehicle violation of the traffic code and/or a minor misdemeanor possession charge.

The events that followed turned the permissible traffic stop for a window violation into an impermissible search for illicit drugs. And, as a matter of law, everything that occurred after the LEADS search revealed no outstanding warrants was not reasonable under the Fourth Amendment. "[T]he mere fact that a police officer has an articulable and reasonable suspicion sufficient to stop a motor vehicle does not give that police officer 'open season' to investigate matters not reasonably within the scope of his suspicion." **Fairborn v. Orrick (June 9, 1988), Court of Appeals of Ohio, Second Appellate District, Greene County C.A. No. 87CA86, 49 Ohio App.3d 94 at 95; 550 N.E.2d 488; 1988 Ohio App. LEXIS 2304 HN1.** But for Officer Smith's decision to continue questioning Dudley about his criminal history, he would not have known about the marijuana Dudley possessed much less the crack cocaine. As a matter of law, this Court finds that there was no proper

basis for detaining the Defendant in order to check his criminal history or to search him for any narcotics he may have possessed.

As a matter of law, the Court **SUSTAINS** the Defendant's motion to suppress with regard to the events that occurred after the LEADS search. Therefore, any narcotics found on his person and any statements that he may have made to the police may not be introduced in the State's case in chief. This evidence was obtained outside of the parameters set by the Fourth Amendment and the body of applicable case law.

(Doc. #12 at 4-5).

**{¶ 6}** "Under the standard of review for a motion to suppress, an appellate court must accept as true the trial court's supported findings of fact and then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *State v. Leveck*, 2d Dist. Montgomery App. No. 23970, 2011-Ohio-1135, ¶8, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶8.

**{¶ 7}** In the present case, the State does not challenge the trial court's factual findings, which are based on Smith's suppression hearing testimony. Instead, the State argues that the undisputed facts satisfied the applicable legal standard. In particular, the State contends the smell of burnt marijuana emanating from the stopped vehicle gave Smith probable cause to search both Dudley and his car. The State also asserts that Dudley was arrested based upon his admitted marijuana possession and that a search incident to arrest resulted in the lawful discovery of crack cocaine in his coat pocket. Therefore, the State argues that the trial court erred in sustaining Dudley's suppression motion.

**{¶ 8}** Upon review, we agree with the State that the trial court erred in sustaining Dudley's motion. We reach this conclusion, however, based on somewhat different reasoning. Without question, Officer Smith was permitted to stop Dudley's car for the window-tint violation. *State v. Taylor*, 114 Ohio App.3d 416, 420, 683 N.E.2d 367 (2d Dist. 1996). Smith, an officer with approximately five years of experience, had smelled marijuana on prior traffic stops. (Suppression hearing transcript at 10). Upon approaching Dudley's stopped car, Smith detected an odor of burnt marijuana emanating from the open driver's side window. (*Id*. at 9-10). This odor gave Smith probable cause to search inside the stopped automobile. *State v. Moore*, 90 Ohio St.3d 47, 48, 2000-Ohio-10 , 734 N.E.2d 804 (holding that "the smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to search a motor vehicle"). At that point, then, the encounter lawfully evolved into both a traffic stop and a search for drugs.

**{¶ 9}** Upon removing Dudley from the vehicle, Smith conducted a weapons pat-down and determined that Dudley had a valid driver's license. Smith also ran a computer check and found no warrants. In its ruling, the trial court reasoned that what followed "turned the permissible traffic stop for a window tint violation into an impermissible search for illicit drugs." (Doc. #12 at 4). We disagree. What happened next was that Smith searched the interior of Dudley's car and found marijuana seeds and residue in the driver's seat. Assuming, arguendo, that the smell of marijuana and the discovery of marijuana remnants in Dudley's car did not provide probable cause for Smith to search Dudley's person for contraband, those facts undoubtedly gave the officer reasonable, articulable suspicion to extend the stop for further

investigation. Cf. *State v. Johnson*, 186 Ohio App.3d 648, 2010-Ohio-840, 929 N.E.2d 1094, ¶24 ("In the present case, the trial court found that the strong odor of marijuana that Taylor smelled in the air created a reasonable and articulable suspicion that one or more of the three or four men at the bus stop had been smoking marijuana. We agree. Further, * * * that suspicion authorized defendant's detention in order to investigate his implication in the suspected criminal activity, that mere suspicion did not authorize a search of the suspect's person for marijuana. * * * For that, probable cause to believe he was in possession of contraband is required.").

**{¶ 10}** Smith then returned to Dudley and asked additional questions. He first inquired about whether Dudley was on probation or parole. Dudley responded that he was on probation for trafficking in crack cocaine. Smith then asked whether Dudley possessed any crack cocaine. Dudley responded negatively but added that he did have marijuana in his possession. (Hearing transcript at 13-14). When Smith asked if he could have the marijuana, Dudley reached into his inner coat pocket and retrieved a baggie that contained two separate bags of marijuana. (*Id*. at 15). Smith characterized the quantity of marijuana as a "minor misdemeanor amount." (*Id*. at 32).

**{¶ 11}** Dudley's admission that he had marijuana in his possession, while lawfully detained, gave Smith probable cause to search him for drugs. *State v. Martin*, 2d Dist. Montgomery App. No. 19186, 2002-Ohio-2621 ("Martin's admissions provided the basis for probable cause to search her for the cocaine she possessed."). The officer was not required to accept Dudley's claim that he possessed nothing else and simply walk away. In *Moore*, the Ohio Supreme Court found probable cause for a warrantless search of the defendant's person

for narcotics where he smelled of marijuana. *Moore*, 90 Ohio St.3d at 51-53. In the present case, with the additional admission by Dudley that he was in possession of marijuana we believe Smith had probable cause to search Dudley's person for additional narcotics. That lawful search based on probable cause resulted in the discovery of crack cocaine in Dudley's coat pocket. We see no Fourth Amendment violation. Therefore, the trial court erred in sustaining Dudley's motion to suppress.

{¶ 12}  The judgment of the Montgomery County Common Pleas Court is reversed, and the cause is remanded for further proceedings.

. . . . . . . . . . . . .

GRADY, P.J., and DONOVAN, J., concur.

Copies mailed to:

Mathias H. Heck
Johnna M. Shia
Elizabeth C. Scott
Hon. Frances E. McGee