[Cite as *State v. Wilcox*, 2012-Ohio-3400.]

IN THE COURT OF APPEALS FOR CLARK COUNTY, OHIO

STATE OF OHIO                          :

    Plaintiff-Appellant               :              C.A. CASE NO.    2011 CA 99

v.                                     :              T.C. NO.    11CR231

ROBERT S. WILCOX                       :              (Criminal appeal from
                                     Common Pleas Court)

    Defendant-Appellee                :

                                                                 :

. . . . . . . . . .

## **O P I N I O N**

Rendered on the     27th     day of     July    , 2012.

. . . . . . . . . .

LISA M. FANNIN, Atty. Reg. No. 0082337, Assistant Prosecuting Attorney, 50 E. Columbia Street, 4th Floor, P. O. Box 1608, Springfield, Ohio 45501
        Attorney for Plaintiff-Appellant

ANTHONY S. VANNOY, Atty. Reg. No. 0067052, 130 West Second Street, Suite 1600, Dayton, Ohio 45402
        Attorney for Defendant-Appellee

. . . . . . . . . .

FROELICH, J.

      **{¶ 1}**   The State of Ohio appeals from a judgment of the Clark County Court

of Common Pleas, which granted Robert S. Wilcox's motion to suppress evidence and dismissed the charges against him. Wilcox had been indicted for possession of crack cocaine and possession of heroin, in violation of R.C. 2925.11(A), after he was arrested for public indecency and was searched pursuant to his arrest. The State asserts that the trial court erred in suppressing the evidence, because Wilcox's arrest for public indecency was proper and the search incident to that arrest did not violate his constitutional rights.

**{¶ 2}** For the following reasons, the trial court's judgment will be affirmed.

I

**{¶ 3}** On March 7, 2011, Springfield Police Officer William Evans was on patrol when a car drove past him in the opposite direction, with the horn blowing continuously. Evans turned his cruiser around and stopped the vehicle to investigate whether the horn was blowing for an emergency or a malfunction. Another officer, Deric Nicols, responded within one or two minutes to assist Evans.

**{¶ 4}** As Evans approached the stopped vehicle, the driver exited and said that the horn was stuck. Evans requested her driver's license, "ran her information" in his computer, and found that her license had been suspended. Because the driver would not be permitted to leave with the car, Evans went to the passenger side of the vehicle, where Wilcox was seated, to see if Wilcox had a valid license to drive. Wilcox was unresponsive to Evans' questions, was "barely conscious," and his speech was slurred. Officer Nicols also requested identification from Wilcox, but Wilcox remained uncooperative and unwilling to identify himself. Evans ordered Wilcox to step out of the vehicle and patted him down, at which point Wilcox did give the officers his name.

{¶ 5}     While Wilcox was outside the vehicle, he informed the officers that he needed to urinate and made numerous requests to use a restroom.  Wilcox attempted to unzip his pants several times in order to urinate, but the officers stopped him and told him to return to the stopped vehicle.  (According to Nicols, the nearest restroom was five blocks away at a gas station.)   The officers cautioned Wilcox that, if he urinated in public, he would be arrested.  Wilcox was not under arrest at this point, but he was repeatedly told to sit inside the stopped vehicle.

{¶ 6}     While Evans wrote the driver's citation for driving with a suspended license, Nicols returned to his cruiser.  A short time later, Evans informed Nicols that Wilcox was urinating on the curb and grass while standing in the open door of the stopped car.  Nicols approached Wilcox, saw his exposed genitals, and arrested him for public indecency.

{¶ 7}     When Nicols searched Wilcox pursuant to his arrest, Nicols found three plastic baggies on Wilcox's person; two contained several small foil packages, and the other contained large "off-white colored rocks."   Nicols believed these items were illegal drugs, and they were seized.

{¶ 8}     Wilcox was indicted on two counts of possession of drugs and pled not guilty.  He moved to suppress the evidence found on his person, arguing that the officers had "provoked the crime" for which they arrested him by refusing to allow him to urinate privately, and that the search conducted incident to his arrest was unlawful.   In response, the State argued that Wilcox chose to urinate in public after being warned that he would be arrested if he did so, and that the evidence against him was properly seized incident to his arrest.

{¶ 9} The trial court found that Wilcox's arrest for public indecency was improper, because he "was not committing acts, but rather responding to a natural biological function, for which, under his intoxicated condition, he had diminished capacity to control and under circumstances which were acerbated by the refusal of the officers to allow him to leave to find a more appropriate facility, even though there were no facts justifying the defendant's further detention." The trial court suppressed the evidence that the officers found when they searched Wilcox incident to his arrest. The court further found that the charges against Wilcox "cannot be maintained without the evidence of illicit drugs suppressed by this order," and it dismissed the charges.

{¶ 10} The State appeals, raising one assignment of error.

II

{¶ 11} The State's sole assignment of error states:

**The trial court erred in determining that Wilcox's arrest for public indecency was improper and thereby suppressing the drugs found during a search incident to arrest.**

{¶ 12} The State asserts the trial court erred in suppressing the evidence since, it argues, the arrest for public indecency was proper and the search done incident to that arrest did not violate Wilcox's constitutional rights.

{¶ 13} In reviewing the ruling on a motion to suppress, an appellate court must accept the trial court's supported findings of fact as being true. *State v. Dudley*, 2d Dist. Montgomery No. 24904, 2012-Ohio-960, ¶ 6. The court must then determine whether the facts satisfy the applicable legal standard; this is done without deference to the conclusion of

the trial court. *Id*.

**{¶ 14}** The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A person is deemed "seized" if he or she is stopped and detained by the police. *State v. Leveck*, 196 Ohio App.3d 26, 2011-Ohio-1135, 962 N.E.2d 316, ¶ 10 (2d Dist), citing *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). If a search is conducted in violation of this right, evidence must be suppressed as "fruit of the poisonous tree." *State v. Cooper,* 2d Dist. Montgomery No. 23719, 2010-Ohio-1120, ¶ 22, citing *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

**{¶ 15}** A traffic stop by a law enforcement officer must comply with the Fourth Amendment's reasonableness requirement. *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). A police officer may stop and detain a motorist when he observes a violation of the law, including any traffic offense, and no independent reasonable and articulable suspicion of other criminal activity is required under *Terry*. *State v. Brown*, 2d Dist. Montgomery No. 20336, 2004-Ohio-4058, ¶ 11; *State v. Broaddus*, 2d Dist. Montgomery No. 23525, 2010-Ohio-490, ¶ 18, citing *State v. Buchner*, 2d Dist. Montgomery No. 21892, 2007-Ohio-4329, ¶ 8. "For the duration of a traffic stop, * * * a police officer effectively seizes 'everyone in the vehicle,' the driver and all passengers." *Arizona v. Johnson*, 555 U.S. 323, 327, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009), quoting *Brendlin v. California*, 551 U.S. 249, 255, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007).

**{¶ 16}** During a legitimate traffic stop, a request for identification from a

passenger, followed by a computer check of that information, does not constitute an unreasonable search and seizure, so long as the traffic stop is not extended in duration beyond the time reasonably necessary to effect its purpose. *State v. Morgan*, 2d Dist. Montgomery No. 18985, 2002 WL 63196, *2 (Jan. 19, 2002), citing *State v. Chagaris*, 107 Ohio App.3d 551, 556-557, 669 N.E.2d 92 (9th Dist.1995). "A request for identification, in and of itself, is not unconstitutional, and is ordinarily characterized as a consensual encounter, not a custodial search." *Id.,* citing *State v. Osborne*, 2d Dist. Montgomery No 15151, 1995 WL 737913 (Dec. 13, 1995); *Brown* at ¶ 15. However, a passenger, unlike the driver of a vehicle, is not legally obligated to carry identification or to produce it for a police officer. *Morgan* at *2; *Brown* at ¶ 15. An officer "making a traffic stop may order passengers to get out of the car pending completion of the stop" due to the added danger to an officer when a passenger is present and the minimal additional intrusion on the passenger. *State v. Ross*, 2d Dist. Montgomery No. 16135, 1997 WL 531217, *2 (Aug. 29, 1997), citing *Maryland v. Wilson*, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997).

{¶ 17} Officer Evans stated he stopped the vehicle because it was driving with its horn blowing continuously, and Wilcox does not contest the validity of the traffic stop. Once the vehicle was stopped, the driver exited the vehicle as Evans approached, to explain that the horn was stuck. At that point, Evans acted within his authority in requesting the driver's license and determining its validity.

{¶ 18} When Evans discovered that the driver did not have a valid license, he approached Wilcox (whose name the driver had been unable or unwilling to provide) and requested his identification. Evans testified that Wilcox was unresponsive to his questions,

was uncooperative, "could barely stand," and was slurring his speech. Although Evans considered the possibility of a medical emergency, he did not request an ambulance and testified that Wilcox "seemed drunk." Evans determined that Wilcox would not be allowed to drive the stopped vehicle. The officers did not violate Wilcox's constitutional rights in asking for his identification or in attempting to assess his fitness to drive the car.

{¶ 19} According to both officers, Wilcox stated on numerous occasions that he needed a restroom to urinate. It is unclear whether he expressly asked to leave, but the officers testified that they repeatedly ordered him back into the car while Evans worked on issuing a citation to the driver. A few minutes later, Wilcox urinated alongside the car.

{¶ 20} The trial court concluded that "there were no facts justifying the defendant's further detention" when "there was no indication that [he] was involved in any criminal activity" and he had been eliminated as a potential driver of the car due to his intoxication. Because the officers had no reasonable basis to prevent Wilcox from leaving, the trial court concluded that Wilcox's urination "was not committing acts, but rather was responding to a natural biological function," and therefore that his arrest for public indecency was "improper."

{¶ 21} We agree with the trial court's legal conclusion that the officers were not justified in detaining Wilcox. While the officers acted lawfully in stopping the car and asking basic questions of Wilcox, the passenger, they violated his constitutional rights when they insisted that he remain in the car or at the scene of the traffic stop while the driver's citation was issued.[1]

---

[1] We need not address the lawfulness of the officers' decision to frisk Wilcox because, even if the search were unlawful, it

**{¶ 22}** In so holding, we do not suggest that officers are not justified in detaining a passenger at the scene of a traffic stop, where there is some reasonable, articulable basis for doing so. In this case, however, the trial court did not find that any such circumstances existed. When the police determined that Wilcox would not be allowed to drive the stopped vehicle, they had no basis to keep him at the scene while the citation of the driver was completed. Wilcox should have been allowed to walk away from the scene when he expressed a need to do so.

**{¶ 23}** The State relies on *Strozier* and *Brown* for the proposition that, during a lawful traffic stop, the police are permitted to detain passengers for as long as they are lawfully justified in detaining the driver. *See State v. Strozier*, 172 Ohio App.3d 780, 2007-Ohio-4575, 876 N.E.2d 1304, ¶ 14 (2d Dist.). *State v. Brown*, 2d Dist. Montgomery No. 20336, 2004-Ohio-4058, ¶ 14. However, in key respects, these cases are distinguishable from the case at hand.

**{¶ 24}** In *Brown*, an officer stopped a car with three occupants for a headlight violation, whereupon he observed an open beer can in the backseat of the car. *Brown* stated that "the Fourth Amendment permits law enforcement officers to detain * * * passengers [of a lawfully stopped vehicle] for the duration of the lawful detention of the driver," citing *Maryland v. Wilson*, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997). It also, recognized, however, that unlike the driver, a passenger is not legally obligated to carry identification or to produce it for law enforcement officers, unless the officer has an independent basis for requesting the passenger's identification, such as a reasonable

did not produce any incriminating evidence.

suspicion that the passenger himself has engaged in illegal activity. *Id.* at ¶ 15. Under such circumstances, "the passenger may be required to identify himself and he may be further detained as part of an investigation of that independent offense." *Id.* *Brown* held that the open beer container in the car provided the officer with a reasonable suspicion that Brown (and the other passengers) were violating the open container statute, R.C. 4301.62.

**{¶ 25}** *Brown* is distinguishable from the case at hand because, by the officers' own admission, Wilcox, although he "seemed drunk," had committed no offense when the officers ordered him to remain in the vehicle. Moreover, we find *Brown*'s recognition of the consenual nature of a passenger's encounter with police officers (in the absence of evidence of an independent offense) to be inconsistent with the State's view that a passenger can be held at the scene of a traffic stop, purely by virtue of his presence in the car and against his will, for as long as the driver is held.

**{¶ 26}** In *Strozier*, a police officer observed a pick-up truck driving erratically, ran its license plate number, and learned that it had been reported stolen. *Strozier* at ¶ 3. When the truck stopped, one of the two passengers exited the vehicle. The police officer ordered the passenger to return to the truck; the officer "wanted all of the occupants of the vehicle in the truck for safety reasons. Specifically, he did not want to risk the passenger circling back and harming him from behind." *Id.* at ¶ 4. When additional officers arrived at the scene, they ordered the passengers out of the truck and onto the ground at gunpoint; although the officers did not have any specific basis to believe that Strozier had a weapon, they wanted "to make sure." *Id.* at ¶ 5. The officers did not know, at that point, to what extent, if at all, Strozier had been involved in the theft of the vehicle. They handcuffed

Strozier while he was on the ground, then stood him up to conduct a pat-down search. Before conducting the pat-down, one of the officers, who had previously been stuck with a needle while conducting a pat-down, asked Strozier if he had "anything on [him] I need to know about? Anything that might stick me?" In response, Strozier stated that he had some "brown stuff" (heroin) in a baggie in his pocket.

{¶ 27} Although *Strozier* has been cited for the proposition that a passenger can be detained for the duration of a traffic stop (a proposition for which it cites *Brown*), the issues in the case did not relate to the length of the detention. Rather, *Strozier* focused on whether the defendant was in custody at the time of his statement, whether the officer's questions prior to the pat-down and prior to giving *Miranda* warnings constituted a "public safety exception" to the *Miranda* rule, and whether the officer should have known that his question would lead to an incriminating response. The length of Strozier's detention was not discussed in the case. Although *Strozier* does contain a statement of law related to the length of a passenger's detention, it cannot, in our view, be properly relied on for the proposition that officers can detain a passenger "for the duration of the lawful detention of the driver," because the case does not otherwise discuss this issue or endorse such a detention. Moreover, the officers in *Strozier* continued to investigate their suspicion that Strozier had been involved in the commission of a crime (the theft of the vehicle in which he was a passenger), whereas the officers in Wilcox's case admitted that they did not suspect him of illegal activity.

{¶ 28} Wilcox's detention was consensual, and *Brown* supports this view. Having concluded that Wilcox's encounter with the police was consensual, we must logically

conclude that he was free to leave, if he chose to do so, even if the driver was still being detained. The trial court correctly found that Wilcox's arrest for public indecency was improper; Wilcox was being held at the scene in violation of his Fourth Amendment rights, after repeatedly expressing his need to urinate, when he "exposed [his] private parts," in violation of R.C. 2907.09. Therefore, the evidence of drug possession, which was obtained in a search incident to Wilcox's arrest, was properly suppressed as fruit of the poisonous tree.

{¶ 29} The State's assignment of error is overruled.

{¶ 30} The judgment of the trial court will be affirmed.

. . . . . . . . . .

FAIN, J. and WILLIAMOWSKI, J., concur.

(Hon. John R. Willamowski, Third District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Lisa M. Fannin
Anthony S. VanNoy
Hon. Richard J. O'Neill