[Cite as *State v. Moore*, 2012-Ohio-4315.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                          :

    Plaintiff-Appellee                          :          C.A. CASE NO.    24934

v.                                                            :          T.C. NO.    11CR1720

ASHLEY L. MOORE                                   :          (Criminal appeal from
                                                                     Common Pleas Court)

    Defendant-Appellant                      :

                                                              :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___21st___ day of _____September_____, 2012.

. . . . . . . . . .

ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

CARL G. GORALESKI, Atty. Reg. No. 0024351, Assistant Public Defender, 117 S. Main Street, Suite 400, Dayton, Ohio 45422
    Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

{¶ 1}     After the trial court overruled her motion to suppress, Ashley L. Moore pled no contest to 35 counts of receiving stolen property, 16 counts of forgery (uttering), four counts of misuse of credit cards, and one count of theft by deception ($500 or more).  The

court found her guilty and sentenced her to five years of community control, which included the requirement that she pay restitution to several retailers.

{¶ 2}  Ms. Moore appeals from her conviction, claiming that the trial court erred in denying her motion to suppress.  For the following reasons, the trial court's judgment will be affirmed.

I.

{¶ 3}  After a hearing on the motion to suppress, the trial court found the following facts, which we find are supported by the record.

The Court finds the following facts were recited by testimony, on record, at the hearing conducted on September 14, 2011.  Detective Matthew Moore ("Detective Moore")[1] has been with the Miami Township Police Department for over 26 years.  Detective Moore has been assigned to the Criminal Investigation Unit for 22-23 years of his career and has mainly investigated fraud cases.  On May 17, 2011, Detective Moore was sitting in his office at the police department when he heard radio traffic between a security guard in JCPenney's at the Dayton Mall and Dayton Mall security control.  The security guard requested for someone from security control to come observe a black female (the "Defendant"), purchasing high dollar gift cards, two $350 gift cards and one $300 gift card.  The Defendant used a credit card with a Florida lD to purchase the gift cards.  The credit card was coming up under the name "VISA Card Holder" and not under the

---

[1] There is no suggestion in the record that Detective Moore and Ms. Moore are related.

individual's name who was assigned to that account. This raised a red flag to Detective Moore.

Detective Moore then headed toward the Dayton Mall. It was then relayed that the Defendant entered a green GMC Denali with Michigan registration, which then raised another red flag because the Defendant was in Ohio, using a Florida lD card, and driving a vehicle from Michigan. It was further relayed that the Defendant had driven her car towards Sears, parked her vehicle, and entered the store. Detective Moore then pulled into the Sears lot and so did an officer in a marked cruiser, who advised that he was going to run the license plate, CBB 0091 with Michigan registration. As Detective Moore entered the Sears store to watch the Defendant, he saw that she was standing at the Customer Service desk purchasing gift cards. Detective Moore walked down an aisle to try and get a better view of what was going on, turned his back, and by that time, the Defendant walked away and exited Sears.

Detective Moore communicated with the outside officer to put a stop on the Defendant if she tried to leave the parking lot, so that he could investigate further. Detective Moore got in his car, and followed the Defendant as she exited onto State Route 741. A marked cruiser activated his lights and the Defendant pulled over. Detective Moore pulled his car in front of the Defendant's vehicle, got out, and approached the driver's side of the vehicle and spoke with Ashley Moore, the Defendant. When Detective

Moore asked for the Defendant's driver's license, she handed him a Michigan driver's license, with the name "Ashley Lynae Moore." In plain view, Detective Moore could see bags of merchandise from stores within the Dayton Mall, but the Defendant denied purchasing anything at the Dayton Mall that day. Detective Moore testified that he verified, in front of the Defendant, with Dayton Mall what identification and credit card had been used to purchase the gift cards.

Detective Moore then asked for the credit card that she had used at JCPenney, and the Defendant cooperated and gave him that credit card from a black wallet. Detective Moore testified that he also observed about three other credit cards in the wallet. Detective Moore then communicated with the security guard at JCPenney to determine the last four digits of the credit card being used to make the purchases in the store. The last four digits were 0794, which appeared on the receipt. The credit card the Defendant handed Detective Moore contained the last four digits of 3717. The Defendant handed Detective Moore the three other credit cards that were in her wallet. Detective Moore testified that he had concerns because the first twelve digits on all four credit cards were identical; the expiration dates on all four cards were identical. Detective Moore testified that the first six digits on credit cards are known as the Bank Identification Number, which identifies the issuing bank. The front of all four credit cards indicated the same bank had issued all four credit cards, but the back of the credit cards indicated they

were not from the same bank. Imprinted on the face of all of the credit cards was the name "Rachel Moore." Detective Moore further testified that the flying dove on the VISA symbol was not holographic which also raised a concern. Detective Moore testified that with all of the above facts, he was potentially looking at counterfeit credit cards.

Detective Moore testified that he asked the Defendant to step out of the vehicle. The Defendant was patted down and when she turned around, the Florida ID card was sticking out of the back pocket of her jeans. The name "Rachel Moore" was also on the Florida ID card. An officer then placed the Defendant under arrest for falsification and stolen credit cards. Once the Defendant was placed under arrest, Detective Moore contacted Bank of America with the account number that was embossed on the face of the credit card that the Defendant claimed she had used. Bank of America claimed that it was not a valid number nor was it one of their accounts. Detective Moore requested information on the other account numbers, which were also not valid accounts.

Detective Moore testified that he called a tow truck to come get the Defendant's car. Detective Moore searched the Defendant's car, and besides the shopping bags, he found the receipts. In the console, Detective Moore found gift cards, receipts for purchases of those gift cards, and a bag that contained 28 additional counterfeit credit cards. The majority of those credit cards had the same twelve digits of the credit cards obtained from the

Defendant's wallet with the name of Rachel Moore.

Detective Moore conducted an interview with Defendant at the Miami Township police department. The door to the interview room was open and the Defendant was given water and allowed to use the bathroom. The State presented State's Exhibit 1, a pre-interview form. Detective Moore testified that he read each right to the Defendant, requested that the Defendant give a verbal response that she understood each right, and initial that she understood each right. The Defendant signed on the line which indicated she understood her rights. Detective Moore testified [that he] read to the Defendant the waiver of rights paragraph beneath the Miranda rights. Detective Moore told the Defendant that if she understood the words in the paragraph, she should initial to acknowledge her understanding and the Defendant wrote her initials. State's Exhibit 1 indicated that the Defendant completed 15 years of school. The Defendant was informed that if she signed the line at the bottom she was waiving her rights and Detective Moore witnessed the Defendant sign. The Defendant agreed to speak with Detective Moore and never asked for attorney or for questioning to stop.

Jennifer Tron, a Special Agent with the United States Secret Service ("Agent Tron") testified that on May 18, 2011, she was assigned to the Defendant's case and obtained information on the Defendant from Moore. On that same day, Agent Tron, and Special Agent Matthew Sherlow ("Agent Sherlow"), spoke with the Defendant at the Montgomery County Jail. The

State presented State's Exhibit 2, a standard Miranda form utilized by secret service. Agent Sherlow went over the Miranda form with the Defendant with Agent Tron present the entire time. Agent Tron testified that she asked the Defendant her level of education and whether she could read, write, and understand the English language. Agent Tron testified that the Defendant signed the Miranda form and agreed to speak with Agent Tron, never asked for an attorney, and never asked for the questioning to stop.

On May 24, 2011, Agent Tron and Senior Special Agent David Barrett (phonetic) ("Agent Barrett") met with the Defendant again in the Montgomery County Jail after determining there was another case open on the Defendant in Washington County and that the Columbus Office was investigating that case as well. The State presented State's Exhibit 3 which was the Miranda form that the Defendant signed and dated May 24, 2011. On June 17, 2011, Agent Tron and Agent Barrett spoke with Defendant again because the Defendant's mother called Agent Tron, informed her that the Defendant had lost Agent's [sic] Tron's number, and that the Defendant wished to speak with her again. The State then presented State's Exhibit 4, which was the Miranda form that the Defendant signed and dated on June 17, 2011.

{¶ 4} Ms. Moore was subsequently charged with numerous counts of receiving stolen property, forgery (uttering), misuse of credit cards, and theft by deception ($500 or more). She moved to suppress the evidence seized from her and all evidence obtained as a

result of information obtained from questioning by law enforcement. She argued that she was seized by the police without the necessary reasonable suspicion and arrested without probable cause. She further asserted that her statements to law enforcement were not voluntary and were given without a proper waiver of her *Miranda* rights.

{¶ 5} After a hearing on the motion to suppress, the trial court overruled the Ms. Moore's motion. The court concluded that Detective Moore had a reasonable articulable suspicion of criminal activity, such that the stop of Ms. Moore's vehicle was justified. It further concluded that, after looking at all four credit cards from Ms. Moore's wallet, Detective Moore "had sufficient enough information to conclude that the Defendant had committed an offense, and the officers had probable cause to arrest [her]." It held that the subsequent search of Ms. Moore's vehicle was constitutional because she was lawfully arrested and both the inventory search and automobile exceptions to the warrant requirement applied. Finally, the court found that Ms. Moore was properly advised of her *Miranda* rights.

II.

{¶ 6} Ms. Moore raises two assignments of error on appeal. They state:

THE TRIAL COURT ERRED WHEN [IT] FOUND THAT THE ARRESTING OFFICER HAD PROBABLE CAUSE AND A REASONABLE ARTICULABLE SUSPICION TO STOP AND SEARCH THE DEFENDANT'S VEHICLE.

THE TRIAL COURT ERRED WHEN IT DENIED THE DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AS A RESULT OF

AN ILLEGAL SEARCH AND SEIZURE BY THE ARRESTING OFFICER.

{¶ 7} On appeal, Ms. Moore claims that the trial court erred in denying her motion to suppress. In reviewing the ruling on a motion to suppress, an appellate court must accept the trial court's supported findings of fact as true. *State v. Dudley*, 2d Dist. Montgomery No. 24904, 2012-Ohio-960, ¶ 6. The court must then determine whether the facts satisfy the applicable legal standard; this is done without deference to the conclusion of the trial court. *Id.*

{¶ 8} Ms. Moore argues that her initial detention by Detective Moore and Officer Miller was based on a mere "hunch" that she was engaged in criminal activity. She emphasizes that she was not detained at the Dayton Mall because Detective Moore felt that he needed additional information, such as the credit cards that she was using and why she had those cards, and that he still did not have this information when he instructed Officer Miller to stop Ms. Moore's vehicle.

{¶ 9} The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Under *Terry,* police officers may briefly stop and/or temporarily detain individuals in order to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity may be afoot. *State v. Martin,* 2d Dist. Montgomery No. 20270, 2004-Ohio-2738, ¶ 10, citing *Terry.* We determine the existence of reasonable suspicion by evaluating the totality of the circumstances, considering those circumstances "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Heard,* 2d Dist. Montgomery No.

19323, 2003-Ohio-1047, ¶ 14, quoting *State v. Andrews,* 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991). The officer must have more than an inchoate hunch or suspicion to justify an investigatory stop.

{¶ 10} Here, Detective Moore – an experienced officer who focused on fraud investigations – heard communications between store security and mall security about a woman who was purchasing high-dollar gift cards and other merchandise using a credit card that did not identify the cardholder's name when used. The detective testified that "credit cards, when you run them through at a point of sale, will come up when it transfers to the receipt, in your account name. Being in this case, if it was your credit card, it would be in your name." Ms. Moore's transactions came up as "VISA cardholder," not under an individual's name. Detective Moore heard a description of the woman and information that she was using a Florida ID. The detective also heard that the woman was driving a vehicle with Michigan registration, although she had Florida identification. The detective observed the woman, later identified as Ashley Moore, inside a Sears store, purchasing additional gift cards.

{¶ 11} Based on Detective Moore's extensive experience as a fraud investigator, Ms. Moore's repeated purchases of high-dollar value gift cards and other merchandise at different stores, her out-of-state identification coupled with the use of a vehicle with another out-of-state registration, and the fact that the credit card transactions did not identify the account owner of the card, the detective had a reasonable and articulable suspicion that Ms. Moore was engaged in criminal activity (particularly, fraudulent credit card purchases) when Ms. Moore's vehicle was stopped by Officer Miller near the Dayton Mall. We find no fault

with the trial court's conclusion that the stop of Ms. Moore's vehicle was based on reasonable articulable suspicion of criminal activity.

{¶ 12}　Ms. Moore does not challenge the trial court's conclusion that her subsequent arrest was based on probable cause, and we find that the court's conclusion is supported by the record.　After her vehicle was stopped, Ms. Moore gave Detective Moore a Michigan driver's license under a different name than that used on the credit cards.　The detective saw several bags of merchandise from multiples stores within the Dayton Mall, even though Ms. Moore denied being at the Dayton Mall that day.　Ms. Moore gave the detective four credit cards with several indicators that the cards were counterfeit, including the facts that the bank names were not identical although the bank identification numbers were the same, the cards all had the same expiration date, the color of the plastic was suspicious, and the VISA symbol was not holographic.　Under these circumstances, the officers had probable cause to believe that Ms. Moore had committed falsification and theft-related offenses.

{¶ 13}　Finally, Ms. Moore claims that the trial court erred in concluding that the search of her vehicle was lawful.　Under the well-established automobile exception to the Fourth Amendment's warrant requirement, police may conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains contraband, and exigent circumstances necessitate a search or seizure.　*State v. Mills,* 62 Ohio St.3d 357, 367, 582 N.E.2d 972 (1992); *Chambers v. Maroney,* 399 U.S. 42, 48, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).　A vehicle's mobility is the traditional exigency for this exception to the warrant requirement.　*Mills* at 367; *California v. Carney,* 471 U.S. 386, 393, 105 S.Ct. 2066, 85

L.Ed.2d 406 (1985). "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment * * * permits police to search the vehicle without more." *Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996). The automobile exception does not have "separate exigency requirement" beyond the vehicle's mobility. *Maryland v. Dyson*, 527 U.S. 465, 467, 119 S.Ct. 2013, 144 L.E.2d 442 (1999). Moreover, "[t]he immobilization of the vehicle or low probability of its being moved or evidence being destroyed does not remove the officers' justification to conduct a search pursuant to the automobile exception." *State v. Russell*, 2d Dist. Montgomery No. 19901, 2004-Ohio-1700, ¶ 34.

{¶ 14} It is apparent that Ms. Moore's vehicle was readily mobile, as demonstrated by the fact that her vehicle was stopped as she drove away from the Dayton Mall. Accordingly, this case turns on whether Detective Moore had probable cause to believe that her vehicle contained evidence or contraband.

{¶ 15} When Detective Moore approached Ms. Moore's vehicle during the stop, he saw, in plain sight, bags of merchandise that had been purchased from stores in the Dayton Mall. As discussed above, the detective then obtained more information about the credit cards that Ms. Moore had used, which gave him probable cause to believe that she had used counterfeit credit cards to make purchases at the Dayton Mall. After Ms. Moore was placed under arrest, Detective Moore contacted Bank of America with the account number that was embossed on the face of the credit card that Ms. Moore claimed she had used at JC Penney's. Bank of America indicated that it was not a valid number nor was it one of its accounts. Detective Moore also requested information on the other account numbers from

the other cards that Ms. Moore had; they also were not valid accounts. This new information further supported Detective Moore's probable cause to believe that Ms. Moore's vehicle contained stolen property and other evidence relevant to the offenses for which she was arrested. Because the detective had probable cause to believe that Ms. Moore's vehicle contained evidence or contraband, the detective's search of the vehicle was permitted under the automobile exception to the warrant requirement. The detective's ability to search the vehicle under the automobile exception was unaffected by his decision to tow the vehicle.

{¶ 16} Because Detective Moore's search of the Ms. Moore's vehicle was lawful under the automobile exception, we need not discuss whether the detective's search was also lawful as an inventory search.

{¶ 17}    Ms. Moore's assignments of error are overruled.

III.

{¶ 18}    The trial court's judgment will be affirmed.

. . . . . . . . . .

GRADY, P.J. and HALL, J., concur.

Copies mailed to:

Andrew T. French
Carl G. Goraleski
Hon. Dennis J. Adkins