[Cite as *State v. Johnson*, 2015-Ohio-4115.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO.   26509 |
| | : | |
| v. | : | T.C. NO. 13CR3359 |
| | : | |
| DEWAYNE JOHNSON | : | (Criminal Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |
| | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ___30th___ day of ___September___, 2015.

. . . . . . . . . . .

CHRISTINA E. MAHY, Atty. Reg. No. 0092671, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

CHARLES W. SLICER, III, Atty. Reg. No. 0059927, 111 W. First Street, Suite 518, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FROELICH, P.J.

{¶ 1} After the trial court overruled his motion to suppress, Dewayne A. Johnson pled no contest in the Montgomery County Court of Common Pleas to possession of heroin, in an amount more than 100 grams, but less than 500 grams, a second-degree

felony. The trial court found him guilty and sentenced him to a mandatory three years in prison, to be served concurrently with his sentence in another case, and suspended his driver's license for six months.

**{¶ 2}** Johnson appeals from his conviction, claiming that the trial court erred in overruling his motion to suppress. For the following reasons, the trial court's judgment will be affirmed.

**{¶ 3}** Sergeant Rhett Close and Officer Kyle Treon of the Riverside Police Department testified on behalf of the State at the suppression hearing. Their testimony, which the trial court found to be credible, established the following facts.

**{¶ 4}** For two or three weeks in October 2013, the Riverside Police Department received multiple reports that an individual called "Wheezy" and a woman, Nikky Caddell, were driving around Riverside in a rented brown or tan Kia sedan and/or staying at the Microtel, located on Linden Avenue. The reports indicated that Wheezy was possibly armed and selling and/or in possession of heroin and crack cocaine. The initial reports were made anonymously; more recent callers had identified themselves and indicated they were relatives of Caddell. In response to the calls, officers attempted to locate the vehicle, but they were unable to do so.

**{¶ 5}** On October 30, 2013, Sergeant Rhett Close heard a dispatch about Wheezy that conveyed similar information as the previous reports. Officer Stamper, in an unmarked police vehicle, drove to the Microtel and informed Close that he had spotted the vehicle at the Microtel. Sgt. Close drove up in a marked cruiser and saw a man exiting a brown or tan Kia that was parked in a space on the right side of the hotel parking lot. Sgt. Close saw the man walking towards the front door carrying a backpack.

{¶ 6} Sgt. Close, who was in uniform, approached the man (later identified as Johnson) and told him to stop. Close asked Johnson his name, but Johnson refused to provide it. Because the calls indicated that Wheezy was likely armed, the sergeant patted Johnson down and checked his backpack for weapons; no weapons were found.

{¶ 7} Eventually, Johnson identified himself, and officers ran his name through the LEADS computer system, which indicated that Johnson had several outstanding warrants. After the warrants were verified, Johnson was placed under arrest.

{¶ 8} The officers located Caddell, the woman with whom Johnson was staying, in a room at the Microtel; the hotel room was reserved in her name. Caddell was transported to the hospital for treatment for heroin withdrawal. The police informed Microtel staff that the room was being vacated; Sgt. Close stated, "[W]e make a practice of doing that."

{¶ 9} Because the car was a rental vehicle, Sgt. Close decided to impound the Kia, and he instructed other officers to conduct an inventory search. Close testified that officers also attempted to make contact with the rental company to let it know where the vehicle was going to be towed. Close indicated that he decided to have the vehicle towed based on Microtel's "verbal" policy (which is not in the record) and the Riverside Police Department's tow policy, with an effective date of September 15, 2011. Sgt. Close stated that Riverside's tow policy allows the police to immediately tow a vehicle, for safekeeping, if a person has been arrested.

{¶ 10} Officers Treon and Schmidt conducted the inventory search in the Microtel parking lot prior to the vehicle's being towed. Two plastic baggies containing numerous gel capsules with suspected heroin were located in the middle console of the vehicle; one

baggie had 74 capsules and the other had 54 capsules. Officers also located a baggie of suspected marijuana and four packages of suspected cocaine. The officers did not obtain a search warrant for the vehicle.

**{¶ 11}** The trial court found that the officers had a reasonable and articulable suspicion of criminal activity to justify stopping Johnson. The trial court noted that the police were investigating a tip made by an identified citizen informant and that the tip was reliable, thus justifying an investigatory detention under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The court found that Johnson was detained "long enough to confirm his identity and determine whether he had outstanding warrants for his arrest." Because Johnson had outstanding warrants, the officers lawfully arrested him.

**{¶ 12}** As for the search of the vehicle, the trial court determined that "once Defendant was arrested, RPD, pursuant to its tow policy and Ohio Law, lawfully inventoried the vehicle including its compartments." It further concluded that the automobile exception justified the warrantless search of the vehicle. Finally, the trial court concluded that the incriminating character of the items found was readily apparent, permitting the officers to lawfully seize the suspected heroin without a warrant. Accordingly, the trial court overruled the motion to suppress.

**{¶ 13}** Johnson appeals the trial court's suppression ruling. On appeal, Johnson claims that the officers "operated outside the scope of their power when they decided to impound a vehicle in the general vicinity, which led to the discovery of evidence used against [him]." He argues that the officers were not entitled to search his vehicle under the automobile exception to the warrant requirement or as a search incident to an arrest. He further asserts that the officers had no authority to conduct an inventory search of the

vehicle.

**{¶ 14}** Johnson does not challenge the trial court's conclusion that the stop and seizure of his person was lawful. He concedes that the police were entitled to ask for his identification, to determine whether he had any outstanding warrants, and to arrest him on those warrants. Accordingly, we will confine our analysis to the officers' search of Johnson's vehicle.

**{¶ 15}** In ruling on a motion to suppress, the trial court "assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994); *State v. Knisley*, 2d Dist. Montgomery No. 22897, 2010-Ohio-116, ¶ 30. Accordingly, when we review suppression decisions, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Retherford* at 592. "Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." *Id*.

**{¶ 16}** At the outset, we disagree with the trial court that the search of Johnson's vehicle was authorized pursuant to the automobile exception. Under the automobile exception, police may conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains contraband, and exigent circumstances necessitate a search or seizure. *State v. Mills*, 62 Ohio St.3d 357, 367, 582 N.E.2d 972 (1992); *Maryland v. Dyson*, 527 U.S. 465, 467, 119 S.Ct. 2013, 144 L.E.2d 442 (1999). A vehicle's mobility is the traditional justification for this exception to the warrant requirement. *Mills* at 367; *Dyson* at 467. "[T]he automobile exception does not have a

separate exigency requirement: 'If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment * * * permits police to search the vehicle without more.'" *Dyson* at 467, quoting *Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996).

{¶ 17} Generally, "[t]he immobilization of the vehicle or low probability of its being moved or evidence being destroyed does not remove the officers' justification to conduct a search pursuant to the automobile exception." *State v. Russell,* 2d Dist. Montgomery No. 19901, 2004-Ohio-1700, ¶ 34. *See Michigan v. Thomas*, 458 U.S. 259, 261, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982).

{¶ 18} Here, the police had received repeated calls from both anonymous and identified citizen informants that Johnson and Caddell were travelling together in a brown or tan Kia sedan and/or staying at the Microtel, that Johnson was likely armed, and that Johnson might possess heroin or crack cocaine. These reports may have created a reasonable and articulable suspicion that Johnson possessed drugs, but the officers had no additional information to create probable cause to believe that the Kia contained contraband. A drug-sniffing dog had not been called to the scene, and there is no evidence that Johnson admitted that drugs were located in the vehicle or that the officers saw drugs in plain view inside the vehicle prior to the search. In the absence of probable cause to believe the Kia contained contraband, the officers were not permitted to search the vehicle under the automobile exception.

{¶ 19} Sgt. Close testified that he decided to impound the Kia and that the officers conducted an inventory search prior to towing it. We have described the inventory exception to the warrant requirement of the Fourth Amendment, stating:

"[T]he 'inventory exception' to the warrant requirement of the Fourth Amendment permits the police to conduct a warrantless search to produce an inventory of the contents of an impounded vehicle." To satisfy the inventory exception, the vehicle must be lawfully impounded, the inventory search must be conducted pursuant to reasonable standardized procedures and also not be a pretext for an evidentiary search. With respect to the standardized policy requirement, "'the evidence presented must demonstrate that the police department has a standardized, routine policy, demonstrate what that policy is, and show how the officer's conduct conformed to that policy.'"

(Citations omitted.) *State v. Thompson*, 2d Dist. Montgomery No. 26130, 2014-Ohio-4244, ¶ 38. "If, during a valid inventory search of a lawfully impounded vehicle, a law-enforcement official discovers a closed container, the container may only be opened as part of the inventory process if there is in existence a standardized policy or practice specifically governing the opening of such containers." *State v. Hathman*, 65 Ohio St.3d 403, 604 N.E.2d 743 (1992), paragraph two of the syllabus, quoted by *State v. Favors*, 2d Dist. Montgomery No. 24921, 2012-Ohio-3596, ¶ 21.

{¶ 20} Johnson claims that the police were not authorized to impound the Kia, because there was no evidence that he was the "operator" of the vehicle. He cites Codified Ordinances of Riverside 303.08(a)(7), which provides that police officers are "authorized to provide for the removal of a vehicle under the following circumstances: * * * (7) When any vehicle is left unattended either on public or private property due to the removal of an ill, injured or arrested operator, or due to the abandonment thereof by the

operator during or immediately after pursuit by a law enforcement officer." The terms "driver" and "operator" are defined as "every person who drives or is in actual physical control of a vehicle." Codified Ordinances of Riverside 301.10, citing R.C. 4511.01(Y).

{¶ 21} Sgt. Close testified that he had received several reports of a couple driving in a brown or tan Kia and that the couple was staying at the Microtel. After being informed by Officer Stamper that the vehicle was located at the Microtel, he (Close) pulled up to the hotel and saw a "male getting out of the vehicle and walking across the parking lot." Sgt. Close stated that he could see that the vehicle was a Kia, brown or tan in color. The man in the parking lot was later identified as Johnson. Although Johnson was not stopped by the police while he was driving the vehicle, Sgt. Close's testimony reasonably established that Johnson was the "operator" of the Kia in the Microtel parking lot.

{¶ 22} The State asserts that Sgt. Close's decision to impound Johnson's rental vehicle was authorized under Microtel's policies and the Riverside Police Department's tow policy. Sgt. Close indicated that Microtel did not have a written policy regarding the towing of vehicles in its lot, and there was no testimony as to the substance of Microtel's policy. Thus, the State has not established what Microtel's policy is and that the Riverside officers' conduct conformed to that policy. We therefore cannot conclude that the impounding of the vehicle was authorized by Microtel's policy.

{¶ 23} The Riverside Police Department's tow policy, Policy and Procedure Order 61-5, provides:

III. Authority

Pursuant to the Ohio Revised Code, a vehicle may be immediately removed and impounded from public or private property by a police agency, if any of

the following apply: * * *

> 7.   If the vehicle is hampering the use of private property by the owner or person in charge of that property or is parked in a manner which impedes the movement of another vehicle.
>
> * * *
>
> 9. If the driver has been arrested (for safe keeping).

(Emphasis sic.)   The tow policy further provides:

> VII. Vehicle Inventory
>
> In order to provide protection and safety of the officers involved, the owner/driver of an impounded vehicle and the Department, it is the policy of this Department to routinely inventory all impounded vehicles.

Section VII of the police department's tow policy describes the scope of the search, including when closed and locked containers may be opened.

**{¶ 24}**  There is no evidence that the Kia was hampering the use of Microtel's property or that Microtel requested that Johnson's vehicle be impounded.   The State could not rely on paragraph seven of the tow policy.

**{¶ 25}**  The trial court reasonably concluded, however, that the Kia was lawfully impounded under paragraph nine of the police department's tow policy.   Johnson, the driver of the vehicle, was arrested pursuant to outstanding warrants.   The State presented testimony that Caddell was Johnson's companion and had rented the Microtel room, but there was no evidence that Caddell was authorized to drive the Kia, which was a rental vehicle; further, Caddell had been removed from the property and transported to

the hospital. Having lawfully arrested Johnson, the operator of the Kia, the Riverside police officers acted in conformity with the department's tow policy when it decided to impound, for safekeeping, Johnson's rental vehicle.

{¶ 26} During the inventory search of the vehicle, the officers lawfully found numerous gel capsules with suspected heroin, a baggie of suspected marijuana, and four packages of suspected cocaine. The trial court did not err in overruling Johnson's motion to suppress the evidence.

{¶ 27} Johnson's assignment of error is overruled.

{¶ 28} The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

DONOVAN, J., concurs.

WELBAUM, J., concurring.

{¶ 29} I concur with the majority except for its conclusion that the officers did not have probable cause to search the tan Kia at the Microtel under the automobile exception. The majority found that the information known to the officers created a reasonable, articulable suspicion that Johnson was likely armed and might have possessed drugs, but that there was insufficient evidence to establish the officers had probable cause to believe contraband was located in the vehicle. I very respectfully disagree with that finding.

{¶ 30} It appears that our difference of opinion begins with our perception of the evidence known to the officers, as the majority interpreted the officers' testimony differently than the trial court and myself. The majority found that the police had received information that Johnson was likely armed and that he *might* have been in possession of heroin or crack cocaine. However, the trial court found that "[t]he caller stated that

Wheezy was likely armed and that the pair *were* selling heroin and crack cocaine." (Emphasis added.) Order Overruling Motion to Suppress (Apr. 16, 2014), Montgomery County Court of Common Pleas Case No. 2013 CR 03359, Docket No. 66, p. 1. There is sufficient evidence in the record to support the trial court's interpretation of the evidence. Accordingly, we should not disturb it.

{¶ 31} Prior to the search, the officers had received between five and seven calls over a three-week period concerning the armed drug trafficking activity of Johnson and his female companion while driving around Riverside in a brown or tan rented Kia. The caller(s) said that the pair was staying at the Microtel. Some of the calls were anonymous, but on at least one occasion the caller identified herself as a relative of Johnson's female companion. *See* Trans. (Jan. 22, 2014), p. 24, ln. 21-23. It is well established that "[i]nformation from an ordinary citizen who has personally observed what appears to be criminal conduct carries with it indicia of reliability, and is therefore presumed to be reliable." (Citations omitted.) *State v. Reed*, 2d Dist. Montgomery No. 23357, 2010-Ohio-299, ¶ 44.

{¶ 32} Sergeant Rhett Close testified that the information received was "that the male was possibly armed and selling and/or in possession of heroin and crack cocaine." Trans., p. 10, ln. 9-10. Close also testified that "[w]e had received multiple calls over the length of time saying [the suspect] was armed." *Id.* at 16, ln. 17-18. In addition, Close testified that on October 30 and 31, 2013, they received a call "that there was a rental car being [a] brown or tan Kia in the area of the Microtel potentially with a subject with [the] alias of Wheezy and a white female in the vehicle, and again possible (sic) armed with heroin and crack cocaine." *Id.* at 12, ln. 16-20.

{¶ 33} Close arrived at the Microtel within 15 to 20 minutes after receiving the last call. He observed a vehicle and Johnson, both fitting the description. Johnson was carrying a backpack and walking away from the vehicle. Close searched Johnson's backpack but found no firearm. Initially, Johnson refused to identify himself, but eventually gave the officers his name. The officers were then able to determine that Johnson had multiple outstanding warrants for his arrest and arrested him. Johnson's female companion was found in the motel room "going through withdrawals of heroin and was actually transported to the hospital." *Id.* at 17-18, ln. 1-2. Thereafter, an inventory of the Kia was completed under the Riverside Police Department policy. While conducting the inventory, officers found the drugs that serve as the basis of this case.

{¶ 34} In addition to the inventory exception to the warrant requirement, the trial court found a second justification for the warrantless search of Johnson's rental vehicle. The trial court concluded that under the circumstances, the officers had probable cause to believe the rental vehicle contained contraband to justify a search under the automobile exception. I agree with that conclusion and concur in the judgment.

. . . . . . . . . . . .

Copies mailed to:

Christina E. Mahy
Charles W. Slicer, III
Hon. Steven K. Dankof